# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mary F. Jefferson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 832 C.D. 2015 |
| | : | Submitted: October 30, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  February 4, 2016**


Petitioner Mary F. Jefferson (Claimant), acting *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed, as modified, an Unemployment Compensation Referee's (Referee) decision denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[2]

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).  Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.  Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review.  *Wasko v. Unemployment Comp. Bd. of Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985).
**(Footnote continued on next page…)**

because Claimant voluntarily quit her employment without cause of a necessitous and compelling nature. For the reasons set forth below, we affirm the Board's order.

Claimant filed for unemployment compensation benefits after she ceased employment with Sunoco Inc. R&M (Employer). The Lancaster UC Service Center (Service Center) issued a determination finding Claimant eligible for benefits. (Certified Record (C.R.), Item No. 5 at 1.) The Service Center acknowledged that a conflict existed as to whether Claimant quit or was discharged, but it found that Claimant was discharged for unknown reasons. Employer appealed the Service Center's determination, and the Referee conducted an evidentiary hearing. During the hearing, Claimant testified on her own behalf, and Employer presented the testimony of Tyrone Byrd, who was Claimant's manager at the time of her separation from employment.

Claimant testified that she was employed by Employer as a customer service representative from November 15, 2012, through May 17, 2014. (C.R., Item No. 10 at 3-4.) She testified that she was discharged by Mr. Byrd after

---

**(continued…)**

A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126 (Pa. Cmwlth. 1998), 794 A.2d 364 (Pa. 1999). In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 265 (Pa. Cmwlth. 2008).

2

she wrote on the schedule that she would not be able to work the overnight shifts because she was pregnant.[3] (*Id.*) She testified that Mr. Byrd did not say anything to her. (*Id.* at 5.) Instead, she was taken off the schedule. (*Id.*) She explained that she went back for weeks and weeks, but she was not on the schedule. (*Id.*)

Claimant further explained that she wrote on the schedule that she did not want to work the night shift, because she was pregnant, sick, and had been involved in an altercation with some customers across the street, so she preferred to leave during the daytime while being pregnant. (*Id.* at 9.) She testified that she advised Employer of her health problems. (*Id.*) She did not provide a doctor's certification, and her doctor did not advise her to switch shifts. (*Id.*) Rather, her doctor only advised her that she could lift up to thirty pounds. (*Id.*) Claimant did not advise Employer about the altercation, but she stated that he, presumably Mr. Byrd, saw it all on the camera so he was aware of it. (*Id.* at 9-10.) She did not mention it to Employer in connection with her request to switch shifts, because she thought her shift would be changed. (*Id.* at 10.)

Claimant testified that she did not speak directly with Mr. Byrd about whether a day shift was open; rather Employer's human resources department called and informed her that if Mr. Byrd, as the manager, says there is no day shift available for her, then there is no shift available. (*Id.*) She does not remember writing the note on the schedule prior to her discussion with human resources, but she may have. (*Id.* at 10-11.) She testified that she was not aware that there was

---

[3] The parties referred to Employer's shift from 10:00 p.m. to 5:00 a.m. or 6:00 a.m. interchangeably as the "night shift" or "overnight shift." Claimant wanted to work a different shift, which the parties referred to interchangeably as the "day shift" or "morning shift."

no opening on day shift until after she wrote the note and human resources called her. (*Id.* at 11.)

She testified that when she was taken off of the schedule, she did not say anything to Employer about continuing to work, because she did not think there was anything to say. (*Id.*) She went back for weeks, probably four, and she was not on the schedule. (*Id.*) She figured she was fired, so she filed for unemployment. (*Id.*) She acknowledged that she wrote on the schedule that she was not coming back into work the night shift after May 17. (*Id.*)

When questioned as to why she believed that she had been discharged, she testified:

> Because I was discharged because I can't - - like I don't understand how I wasn't discharged. I wasn't specifically hired to work overnight so why shouldn't I be able to be switched to dayshift if I'm pregnant and can't put up - - can't even do that stuff during the night, so I didn't think it was a problem for him to just switch me.

(*Id.*) She confirmed that she did not contact Mr. Byrd in an attempt to resolve the situation after she found that she was not on the schedule,

> [b]ecause I couldn't work overnight, right? Regardless of what the doctors were saying my body just could not stand that shift. I'm falling asleep at the register. Customers knocking on the window to wake me up and there was one incident where my drawer was $10 short because I gave somebody too much change back so I just couldn't work overnight.

(*Id.* at 12.) She also acknowledged that continuing work was available had she remained employed. (*Id.*)

Mr. Byrd testified that Claimant voluntarily left her employment. (*Id.* at 5.) He explained that Claimant had been working 10:00 p.m. to 5:00 a.m. or

4

6:00 a.m., and she wrote on the schedule that she could no longer work the overnight shift. (*Id.* at 6.) Claimant had previously told Mr. Byrd that she did not want to work the overnight shift. (*Id.*) Instead, she wanted to work the morning shift due to her pregnancy. (*Id.*) He testified that he told Claimant that there was no morning shift work available for her. (*Id.*) He testified that Claimant did not give any specific reason that she could not work due to the pregnancy. (*Id.*) When he saw the note, he did not put her on the schedule. (*Id.*) He could not give her the day shift because someone else had that shift. (*Id.* at 7.) He testified that he spoke with Claimant, and she said that she was no longer going to work. (*Id.*) She did not give him a medical certification, and continuing work was available. (*Id.*) Mr. Byrd testified that he took Claimant off the schedule because she said she was not going to work, so there was no need to put her on the schedule. (*Id.*)

Regarding whether Mr. Byrd told Claimant that there was no day shift work available, he testified:

> We had that conversation and I did tell her that there's nothing open. I don't have no dayshift for you. After that, that's when I got a call from Human Resources and I informed them the same thing of what I told her and they said well we'll call her and tell her the same thing also.

(*Id.* at 13.)

Following the hearing, the Referee issued a decision, which reversed the Service Center's determination, thereby denying Claimant unemployment compensation benefits. (C.R., Item No. 11.) The Referee determined that Claimant was not eligible for benefits under Section 402(b) of the Law, because she had voluntarily quit her employment without cause of a necessitous and compelling nature.

5

Claimant appealed to the Board, which affirmed the Referee's decision that Claimant had voluntarily quit her employment without cause of a necessitous and compelling nature. (C.R., Item No. 15.) In so doing, the Board made the following findings of fact:

1. The claimant was last employed as a part-time customer service representative by Sunoco Inc. R & M at a final rate of $9.10 per hour. The claimant began employment on November 15, 2012, and her last day of work was May 17, 2014. The claimant worked on average twenty-one (21) hours per week.

2. The claimant told the employer's manager that she did not want to work the night shift due to her pregnancy.

3. The manager told the claimant that there were no openings in the morning shift.

4. The claimant did not provide the employer with medical documentation.

5. The claimant's doctor did not advise the claimant to change her shift.

6. A week later, the manager saw a note from the claimant on the schedule stating that she was no longer going to work overnight.

7. The manager did not schedule the claimant to work because there were no available shifts besides the night shift.

8. The claimant did not say anything to the employer about not being on the schedule.

9. The employer had continuing work available.

10. The claimant voluntarily quit her employment because she did not want to work the night shift due to being pregnant.

(*Id.* at 1-2.) In rendering its findings of fact, the Board resolved the conflicts in testimony, in relevant part, in favor of Employer and found its witness' testimony to be credible.[4]

In concluding that Claimant voluntarily quit her employment without cause of a necessitous and compelling nature, the Board reasoned:

> The parties disagree whether the claimant quit her employment or she was discharged. The manager credibly testified that he told the claimant that she could not work the morning shift because there were no openings. Both parties testified that the claimant placed a note on the schedule that she would no longer work the night shift. As the claimant was aware that there were no openings before she placed the note on the schedule, the Board finds that the claimant did not establish that her separation from employment was involuntary. Therefore, the Board will determine whether the claimant is eligible for benefits pursuant to Section 402(b) of the Law.
>
> . . . .
>
> The claimant testified at the hearing that she quit her employment because she did not want to work the night shift due to being pregnant and because she had issues with customers from across the street. The Board does not find the claimant's testimony credible that she quit because she had issues with customers. Therefore, the Board finds that the claimant quit her employment

---

[4] We note that throughout the decision, the Board referred to the parties as the "claimant" and the "employer." The Board, however, when rendering its credibility determination, wrote that it resolved the conflict "in favor of the *employee* and finds *its* witness' testimony to be credible." (C.R., Item No. 15 at 2 (emphasis added).) Although the Board used the word "employee" (as opposed to "claimant" or "employer"), it is apparent based upon its subsequent use of the word "its" and the content of the decision, that the Board's opinion contained a typographical error. Thus, we deem the Board's decision as finding the testimony of Employer's witness to be more credible than that of Claimant.

7

because she did not want to work the night shift due to being pregnant.

The claimant testified that her doctor never advised her that she could not work the night shift. Further, the manager credibly testified that the claimant never provided him with any medical documentation. While the claimant testified that her body could not take working the night shift, the Board finds that claimant failed to establish that adequate health reasons existed for her to quit her employment. Further, the manager testified that the claimant requested to work another shift because she was pregnant, but did not give him any specific reason or limitation for not being able to work. Therefore, the Board also finds that the claimant did not properly communicate with the employer her health issue and also did not make reasonable efforts to preserve her employment.

(*Id.* at 2-3.)

On appeal,[5] Claimant essentially argues that substantial evidence does not exist to support the Board's findings of fact regarding Employer's accusations against Claimant. Claimant also argues that the Board committed an error of law when it analyzed her claim under Section 402(b) of the Law, relating to voluntary resignation of employment without cause of a necessitous and compelling nature, because it should have analyzed the matter under Section 402(e) of the Law,[6]

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[6] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to "willful misconduct in connection with his work."

relating to discharge for willful misconduct. Claimant further argues that the Board erred in affirming the Referee's decision, because the Referee violated Claimant's rights by displaying a negative attitude or bias against Claimant and by altering the hearing transcript.

First, we will address Claimant's argument that substantial evidence does not exist to support the Board's findings of fact regarding Employer's accusations against Claimant, which appear to include findings of fact numbers 6, 7, 9, and 10. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not

9

follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

In findings of fact numbers 6 and 7, the Board found that a week after Employer denied Claimant's request to work the morning/day shift, "the manager saw a note from the claimant on the schedule stating that she was no longer going to work overnight," and "[t]he manager did not schedule the claimant to work because there were no available shifts besides the night shift." As discussed above, Employer's manager testified that he denied Claimant's request to work the dayshift because another employee already worked that shift, and he removed her from the schedule because she left a note stating that she was not working the night shift. (C.R., Item No. 10 at 6-7.) In finding of fact number 9, the Board found that "[E]mployer had continuing work available." During the hearing, the Referee asked Claimant: "All right anything else? Was continuing work available had you remained employed?" (*Id.* at 12.) Claimant responded, "Yes." (*Id.*) Thus, Claimant's own testimony supports finding of fact number 9. Finally, the Board found in finding of fact number 10 that "[C]laimant voluntarily quit her employment because she did not want to work the night shift due to being pregnant." This finding is supported by the Claimant's response to the Referee's question as to why she did not ask to be placed back on the schedule when she learned that there was no opening on the day shift. Claimant responded that she "couldn't work overnight… [r]egardless of what the doctors were saying [her] body just could not stand that shift." (*Id.* at 12.) The Board's findings of fact numbers 6, 7, 9, and 10, therefore, are supported by substantial evidence of record.

Next, we will address Claimant's argument that the Board committed an error of law when it analyzed her claim under Section 402(b) of the Law,

10

relating to voluntary resignation of employment without cause of a necessitous and compelling nature, because it should have analyzed the matter under Section 402(e) of the Law, relating to willful misconduct. Whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to this Court's review and must be determined from a totality of the facts surrounding the cessation of employment. *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996). "It is a claimant's burden to prove that his separation from employment was a discharge." *Id.* at 412. If a claimant proves that he was discharged, then the burden to prove that the claimant was discharged for willful misconduct is on the employer. *Id.* at 412–13. If a claimant fails to prove that he was discharged, then the claimant has the burden to prove necessitous and compelling reasons for quitting. *See Empire Intimates v. Unemployment Comp. Bd. of Review*, 655 A.2d 662, 664 (Pa. Cmwlth. 1995). A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment. *Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004). On the other hand, to be interpreted as a discharge, the employer's language must possess the immediacy and finality of a firing. *Charles v. Unemployment Comp. Bd. of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989).

In support of Claimant's argument that the Board should have analyzed her claim as a discharge by Employer, she contends that she worked in a hostile work environment where the manager would give special treatment to some employees and not others. She asserts that Employer fired her when she requested to switch from night to day shift due to her pregnancy and not being able to meet the requirements for the night shift. She contends that Employer refused her

11

request and told her that her shift would be switched "when [her] work ethic changes." (Claimant's br. at 7.) She claims that prior to and during the hearing, Employer made numerous false accusations regarding her work ethic and the shift for which she was hired. In addition, she disputes Employer's contention that she resigned from her employment.

In order to determine whether the Board properly applied Section 402(b) of the Law to the instant matter, we must examine the findings of fact issued by the Board. As noted above, the Board found that Claimant informed Employer that she did not want to work the night shift due to her pregnancy. Despite Employer's refusal to grant Claimant's request because no work was available for her on the day shift, Claimant nevertheless left a note stating that she was no longer going to work the night shift. When Employer did not schedule her for additional shifts, she did not contact Employer to be placed back on the nightshift schedule. Given those findings of fact, we must conclude that Claimant demonstrated a conscious intention to terminate her employment. As such, the Board properly analyzed her claim under Section 402(b) of the Law.[7]

Finally, Claimant argues that the Board erred in affirming the Referee's decision, because the Referee violated Claimant's rights by displaying a negative attitude or bias against Claimant and by altering the hearing transcript. She contends that the Referee interrupted most of her statements in mid-sentence

---

[7] We note that Claimant does not assert an alternative argument that the Board erred in concluding that she did not have a necessitous and compelling reason for voluntarily quitting her employment, and, thus, we need not consider whether the circumstances surrounding her voluntary termination of her employment constituted necessitous and compelling reasons for quitting her employment.

12

and asked misleading questions in order to support Employer's argument. She also contends that the Referee altered the hearing transcript.

We agree with the Board that a review of the transcript reveals that the Referee interrupted Claimant's testimony on a handful of occasions to ask relevant and pointed questions.[8] The Referee's questions were consistent with the Referee's duties under 34 Pa. Code § 101.21(a), relating to the conduct of hearings before a referee, which provides:

> In a hearing the [referee] may examine the parties and their witnesses. Where a party is not represented by counsel the [referee] before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

In addition, following the Referee's questions, the Referee afforded Claimant an opportunity to expound further on her previous answers, which she repeatedly did. At the conclusion of the hearing, the Referee gave Claimant one last opportunity to provide additional testimony by asking her if there was "anything else that [she] want[ed] to add to the record." (C.R., Item No. 10 at 12.)

As to Claimant's contention that the Referee altered the hearing transcript, there simply is no evidence to support such a contention. As the Board explained, the Board (not the Referee) directed that the recording of the hearing be transcribed after her appeal to the Board. *See* 34 Pa. Code § 101.54(a). The

---

[8] The Referee asked questions relating to the nature of Claimant's separation, Claimant's last day of employment, whether Claimant's doctor advised her to request a change of shifts, whether Claimant understood the Referee's prior question regarding an altercation with a customer, the content of Claimant's note to the manager on her last day of employment, and why Claimant did not talk to the manager about having her name put back on the schedule.

13

Referee had no involvement in the transcription process, as the hearing was transcribed by a transcriber (not the referee). (*See* C.R., Item No. 10 at 14.) Moreover, Claimant does not specify how the transcript fails to adequately represent her testimony.[9]

Accordingly, the order of the Board is affirmed.

P. KEVIN BROBSON, Judge

---

[9] Claimant also appears to take issue with the fact that the Service Center awarded benefits, the Referee denied benefits, and the Board also denied benefits but issued different findings of fact, all in the same case. What Claimant fails to appreciate is that the Board is the ultimate fact finder and is not required to accept a Referee's findings of fact. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d at 1383, 1388 (Pa. 1985).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary F. Jefferson,                          :
                Petitioner               :
                                  :
           v.                          :    No. 832 C.D. 2015
                                  :
Unemployment Compensation          :
Board of Review,                           :
                Respondent             :

## **O R D E R**

AND NOW, this 4th day of February, 2016, the order of the Unemployment Compensation Board of Review is AFFIRMED.

---

P. KEVIN BROBSON, Judge