Emgee Engineering Company *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania (3 Cases).

Argued March 7, 1977, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Leonard A. Costa, Jr.,* with him *Robert Rade Stone,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, May 24, 1977:

This case involves three appeals by the Emgee Engineering Company (Emgee) from orders of the Unemployment Compensation Board of Review (Board) each of which affirmed a referee's decision and allowed benefits to Russell E. Gratton, William M. Alexander, III and Richard D. Staudacher, respectively. In each case the compensation authorities concluded that the failure of Emgee, on several occasions, to make a timely payment of wages according to the agreed-upon schedule for payment constituted "cause of a necessitous and compelling nature" for leaving one's employment within the meaning of Section 402

(b)·(1) of the Unemployment Compensation Law[1] (Act).

In each of the three cases, the compensation authorities found that the claimant involved had not received his pay on the agreed-upon payday on several occasions. They also found that the claimants terminated their employment after the three had requested their employer to guarantee the timely payment of wages and the employer had refused to make such guarantee. We have reviewed the record and conclude that these findings are supported by substantial evidence. We are, therefore, bound by them. *Unemployment Compensation Board of Review v. Moran*, 21 Pa. Commonwealth Ct. 387, 346 A.2d 591 (1975).

Emgee's first argument is that the claimants are barred from receiving unemployment compensation because they failed to avail themselves of the legal remedies provided by the Wage Payment and Collection Law[2] (W.P.C.L.). *See Horning Unemployment Compensation Case*, 177 Pa. Superior Ct. 618, 620, 112 A. 2d 405, 406 (1955). Assuming that the principle stated in *Horning* is applicable to this type of case,[3] we still must conclude that it does not preclude the granting of benefits in this particular case.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1), which provides in part:

An employee shall be ineligible for compensation for any week—

. . . .

(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

[2] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §260.1 et seq.

[3] Regarding *Horning*, we note that the case did not involve a dispute between an employer and organized labor, and that the principle of preclusion from benefits because of the availability of

Section 11(a) of the W.P.C.L.[4] provides employes with a right of action for "unpaid wages and liquidated damages." Under Section 10 of the W.P.C.L.,[5] liquidated damages are only available if wages have remained unpaid for over thirty days. Finally, under Section 9(a) of the W.P.C.L.,[6] the employer is only subject to an action for penalties by the Secretary of Labor if he fails to pay the wages within ten days after notice from the Secretary of a claim. Thus, where the employer pays the wages within a short time after they are due and payable, as Emgee did by never being more than five days late, all liability under the W.P.C.L. can be avoided. The W.P.C.L. does not provide an adequate remedy at all for cases such as the present one.

Emgee also argues that, although wage payments were made up to five days after the orally agreed-

other remedies was *not* the basis of decision. The principle of preclusion by other remedies is applied in cases involving organized labor. *See, e.g., Hughes Unemployment Compensation Case,* 187 Pa. Superior Ct. 252, 144 A.2d 685 (1958) ; *Accurti Unemployment Compensation Case,* 187 Pa. Superior Ct. 391, 144 A.2d 673 (1958) ; *Arbechesky Unemployment Compensation Case,* 174 Pa. Superior Ct. 217, 100 A.2d 396 (1953) ; *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 90 A.2d 322 (1952) ; *Morris Unemployment Compensation Case,* 169 Pa. Superior Ct. 564, 83 A.2d 394 (1954) ; *Glen Alden Coal Co. v. Unemployment Compensation Board of Review,* 168 Pa. Superior Ct. 534, 79 A.2d 796 (1951) ; *Cassell Unemployment Compensation Case,* 167 Pa. Superior Ct. 440, 74 A.2d 809 (1950). Where, as here, employes must deal with the employer without the benefit of a union and its collective strength, we seriously question whether the availability of contract or other legal remedies for resolving wage disputes invariably precludes resort to unemployment compensation. Such remedies may have virtually no utility in dealing with a pattern of relatively minor yet separate breaches of the employment contract by the employer.

[4] 43 P.S. §260.11(a).
[5] 43 P.S. §260.10.
[6] 43 P.S. §260.9(a).

upon payday, the payments were not legally "late" under Section 3 of the W.P.C.L.[7] It hinges this argument upon the third sentence of Section 3 which reads:

> All wages earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, within the standard time lapse customary in the trade *or within 15 days from the end of such pay period.* (Emphasis added.)

Taken out of context, this arguably would give an employer his choice of any of 15 days from the end of a pay period to make payment *after each and every pay period.* However, this completely ignores the first sentence of Section 3: "Every employer shall pay all wages due to his employes on regular paydays designated in advance by the employer." These two provisions can be reconciled only if the third sentence of the Section is viewed as establishing the *range* of days or *limits* within which an employer may *designate the regular payday.*[8] Once designated, the employer's duty to make payment of wages on that day is fixed. There is no doubt in the present case that the chosen payday was missed on several occasions and was legally "late."

Finally, we reach the question of whether several instances of tardy payment of wages and a refusal to guarantee timely payment in the future provides "cause of a necessitous and compelling nature" for leaving one's employment. The record discloses that from the period from September 1975 through December 1975 Staudacher was paid late three times; the

---

[7] 43 P.S. §260.3.

[8] Of course, "the payday" may vary as to date and day according to a fixed schedule or system in order to avoid having it fall on a weekend or holiday, as did the "regular payday" in the present case. A key criteria of a "regular payday" is an even predictability.

pays being two, three, and five days late. From October 1975 through December 1975, Gratton and Alexander received two late pays; the pays being two and five days late. A meeting of the three employes with the President of Emgee in December 1975 failed to produce the desired guarantee of timely payment henceforth.

Our research discloses only a single case which is to any extent on point. In *Vancheri Unemployment Compensation Case,* 177 Pa. Superior Ct. 553, 112 A.2d 433 (1955), the court held that an employe who quit his employment rather than accede to his employer's request to wait for four days beyond the agreed payday to be paid had not been compelled to do so by necessitous circumstances. *Id.* at 556, 112 A.2d at 434. We have little doubt that circumstances could exist such as to make an *isolated* instance of *requesting* an employe to wait an extra day or two for his pay an entirely reasonable request.[9] Quitting one's job in the face of such a request would not be "consistent with ordinary common sense and prudence." *United States Steel Corp. v. Unemployment Compensation Board of Review,* 18 Pa. Commonwealth Ct. 71, 333 A.2d 807 (1975). This is not such a case. Here we have *several instances* within the space of a few months where the employees arrived at work on payday to suddenly discover that their paychecks would not be received for some *indeterminate* number of days. Justifiably, these employes became concerned about their income security.

Emgee attributes the tardiness of the salary payments to problems with its cash flow. We do not believe that this is a sufficient reason for this Court to conclude that the claimants were required to acquiesce

---

[9] For example, the breakdown of a computer which processes paychecks.

in the lateness of payment. Cash flow is a management problem, the risk of which is assumed by the ownership, not the employes, of a business. Certainly employes should not be required to repeatedly suffer for management's continuing inability to maintain a proper cash flow.

Finally, we must note that for nearly a decade we have been living in what may be called "The American Age of Inflation and Credit." Many, if not most, of our citizens tread the tightrope between paydays maintaining a precarious balance between the ever increasing prices for what we buy today and the debts we incurred for our purchases of yesterday. We believe it too much to add to the employe's burden of balancing his budget and paying his debts when they come due the task of accommodating his financial management to the management problems of his employer.

Under the facts in the three appeals before us, we must conclude that the Board correctly determined that these claimants had left their employment for compelling and necessitous cause and were entitled to benefits. We affirm in all three appeals.

ORDER

AND Now, his 24th day of May, 1977, the Order of the Unemployment Compensation Board of Review, dated June 4, 1976, Decision No. B-131894, allowing benefits to Russell E. Gratton is hereby affirmed.

ORDER

AND Now, this 24th day of May, 1977, the Order of the Unemployment Compensation Board of Review, dated June 4, 1976, Decision No. B-131895, allowing benefits to William M. Alexander, III is hereby affirmed.

ORDER

AND Now, this 24th day of May, 1977, the Order of the Unemployment Compensation Board of Review,

dated September 10, 1976, Decision No. B-134512, allowing benefits to Richard G. Staudacher, is hereby affirmed.