FEKOS ENTERPRISES, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Fekos Enterprises, Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 21, 2000.

Decided May 3, 2001.

David P. Gaudio, Bridgeville, for petitioner.

Carol J. Mowery, Harrisburg, for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge, LEDERER, Senior Judge.

LEADBETTER, Judge.

In these consolidated appeals, Fekos Enterprises (employer) challenges two orders of the Unemployment Compensation Board of Review (Board) affirming the grant of benefits to two Fekos employees.[1]

In the first case, claimant Mary J. Sciaretta quit her job with employer in May of 1999 and applied for unemployment benefits. The job center disapproved benefits, finding that Sciaretta had not proven a necessitous and compelling reason for leaving her job.

Sciaretta appealed the job center's determination and a hearing before a referee was scheduled. Although the job center sent notice of the hearing, employer failed to send a representative. Based on Sciaretta's testimony, the referee concluded that she had left her job for a necessitous and compelling reason and reversed the determination of the job center, granting benefits under Section 402(b) of the Unemployment Compensation Law.[2]

Employer appealed the determination of the referee to the Board, claiming never to have been notified of the hearing. The Board remanded the matter to the referee for additional testimony on the issue of employer's failure to appear and the merits of the case. Eventually, the Board found that employer had not shown good

---

1. Based on the issues raised by employer, our review is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether the Board committed an error of law.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

cause for not attending the first hearing, declined to hear employer's evidence on the merits of the case, and affirmed the referee's initial determination.

In the second case, claimant Edwin K. Woodson last worked for Fekos in the Arby's restaurant at the Pittsburgh International Airport on July 1, 1999 and applied for unemployment benefits on July 25, 1999. The job center issued a notice of determination approving benefits, which, due to employer's failure to provide information, was based solely on Woodson's statement that he was dismissed because of a dispute involving the whereabouts of a payroll.

Employer appealed the job center's determination. At a hearing before the referee, employer offered testimony that Woodson voluntarily terminated his employment. The referee remanded the matter to the job center for further investigation into whether Woodson had quit or been discharged.

The job center issued a second determination granting benefits and employer again appealed. After a second hearing, the referee determined that employer made the decision to end the employment relationship and approved benefits. Employer appealed to the Board, which affirmed the decision of the referee and granted benefits.

■ As a prefatory matter, we address the Board's motion to strike employer's petitions for review. There is no merit in the Board's contention that employer's petitions for review are insufficient to preserve any issues in the instant appeals. Rule 1513 of the Pennsylvania Rules of Appellate Procedure sets forth the required contents of a petition for review. A petition for review must contain "a *general* statement of the objections to the order or other determination." (emphasis added). The statement of objections is deemed to include "every subsidiary question fairly comprised therein." *Id.*

We agree with employer that the petitions, while inartfully drafted, contain objections to the Board's conclusions. In particular, the petition in the Sciaretta case appears to challenge the Board's conclusion that her quitting was the result of a necessitous and compelling reason. Likewise, the petition in the Woodson case may be construed as objecting to the Board's conclusion that Woodson was dismissed. We therefore deny the Board's motion to strike employer's petitions for review.

■ With regard to the first case, employer argues that Sciaretta is not entitled to benefits because her reasons for leaving her job with employer were insufficient under Section 402(b) of the Unemployment Compensation Law, 43 P.S. § 802(b). Section 402(b) renders a claimant who quits work voluntarily without necessitous and compelling reason ineligible to receive unemployment benefits. *Id.* Thus, a claimant who alleges that she has left a job for necessitous and compelling reasons has the burden of establishing the existence of necessitous and compelling reason for leaving her employment. *Taylor v. Unemployment Compensation Bd. of Review,* 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). Such reasons must result from "circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Id.* at 359, 378 A.2d at 832–33.[3]

---

3. The issue of whether necessitous and compelling reasons for voluntarily leaving employment exist is a legal conclusion always subject to appellate review. *Taylor v. Unemployment Compensation Bd. of Review,* 474 Pa. 351, 359, 378 A.2d 829, 832–33 (1977).

At the initial hearing, Sciaretta testified that she had had repeated problems with paychecks from employer. When one paycheck bounced in January of 1999, employer failed to issue a replacement check until April 1999. Sciaretta testified that she was forced to take her paychecks to employer's bank to be cashed because of employer's failure to maintain adequate balances in its account to cover the checks. Sciaretta also testified that she was required to work shifts ten to twelve hours in length with only a few hours between shifts, no breaks, and no assistance. When she complained about her hours, she was given "write-ups" for other things. The referee made findings of fact reiterating Sciaretta's complaints, which were affirmed by the Board. Since the findings are supported by substantial evidence, they are conclusive. *Id.*

In *Emgee Engineering v. Unemployment Compensation Board of Review*, 30 Pa.Cmwlth. 290, 373 A.2d 779, 782 (1977), we concluded that an employee who quits after his employer had repeatedly delayed payment of wages acted with ordinary common sense in leaving his employment. We reasoned that insufficient cash flow was a management problem, the risk of which should not be borne by employees. *Id.* We believe that the instant case presents a comparable situation. Given the Board's findings that Sciaretta had been forced in one instance to wait an inordinately long period to be paid and on other occasions was forced to appear at employer's bank to cash her paychecks because of employer's problems maintaining sufficient balances, we conclude that Sciaretta had necessitous and compelling reason to leave her job.

With regard to the other case before us, employer contends that Woodson was not discharged, but voluntarily left his job. Whether a claimant was discharged is a question of law to be determined based upon the Board's factual findings. *Beverly Ents., Inc. v. Unemployment Compensation Bd. of Review*, 702 A.2d 1148, 1151 (Pa.Cmwlth.1997). A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment. *Monaco v. Unemployment Compensation Bd. of Review*, 523 Pa. 41, 45, 565 A.2d 127, 129 (1989) (quoting *Roberts v. Unemployment Compensation Bd. of Review*, 61 Pa.Cmwlth. 21, 432 A.2d 646, 648, (1981)). In determining the intent of the employee, the totality of the circumstances surrounding the incident must be considered. *Monaco*, 523 Pa. at 46, 565 A.2d at 129.

In his testimony before the referee, Woodson gave the following account of the circumstances surrounding his departure from Arby's:

On July 1, the man, general manager's name was Chuck. He and I got into a disagreement about where the paychecks were, and I calmed down and he proceeded to get his voice loud. So we got into an argument and he told me to punch out. So I punched out. I had several people around me with him tell me to punch out and as I was punching out he turned to me he said well, I need you to come back on Saturday. I said okay, fine. He said go home for the day and had the next day off, come back on Saturday. I said okay, fine. So Saturday comes I called about 5 o'clock. I spoke to Patrick Orr (ph) which was another manager there. I ask him what time I was supposed to work. And he said well, you're not on the schedule anymore. And I'm like—he said I heard that you quit. I said, no, Patrick, I did not quit. He said well, I'm going to call Chuck and find out what's going on and I'll call you back. He didn't return my

call. So I called back in ten minutes. I said well, did you speak to Chuck. He said yes. He said well, you're scratched off the schedule. I told Patrick, I said, I did not quit. And he said well, you're scratched off the scheduled [sic]. You know we heard that you quit that's why I didn't call you. So we just scratched you off the schedule. And that's the last time I spoke to anybody at Arby's.

The Board's findings of fact essentially track Woodson's testimony, and conclude with a finding that "[t]he claimant did not voluntarily terminate his employment."

Upon review of the record, we conclude that there is no evidence of a conscious intent on the part of Woodson to voluntarily leave his job. To the contrary, the record indicates that Woodson was attempting to contact employer to determine when he should come into work when he was told he had been removed from the schedule. Accordingly, there is ample basis for the Board's conclusion that Woodson did not quit, but was dismissed. *See Ryan v. Unemployment Compensation Bd. of Review,* 68 Pa.Cmwlth. 207, 448 A.2d 713, 715 (1982) (evidence that claimant was instructed by her employer not to return to work was sufficient to establish that she was discharged, and that her actions did not amount to a voluntary termination of her employment).

In light of the foregoing, we affirm both orders of the Board.

### ORDER

AND NOW, this 3rd day of May, 2001, the orders of the Unemployment Compensation Board of Review granting benefits to Mary J. Sciaretta and Edwin K. Woodson in the above captioned matters are AFFIRMED; the Unemployment Compensation Board of Review's motions to strike employer Fekos Enterprise's peti-

tions for review and dismiss employer's appeals is dismissed.