Donald F. SPADARO, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 2004.

Decided May 26, 2004.

---

Peter M. Suwak, Washington, for petitioner.

Judith M. Gilroy, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Donald F. Spadaro (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board), which affirmed the referee's decision that Claimant voluntarily quit his employment making him ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] We affirm.

The facts, as found by the Board, are as follows:

1. The claimant was last employed as the Lead Loader for approximately 9 years with CDL Medical Technologies, Inc. making $16.58 an hour and his last date of employment was March 25, 2003.

2. The claimant would deliver and repair equipment for Cardiologist of the employer.

3. The claimant had worked with the owner of the company from the beginning.

4. The owner of the company decided that since the company was expanding that they needed a supervisor that had all of the requirements as a Technologist.

5. The claimant's supervisor was then hired because he had educational qualifications that the claimant did not have.

6. The claimant and his new supervisor did not get along.

7. After the decision to give the claimant another supervisor there were numerous letters and incident reports involving the claimant.

8. The claimant's performance began to deteriorate significantly, wherein the owner of the company agreed to keep the claimant on and encouraged the claimant and his supervisor to work through the problems.

9. The claimant's supervisor urged the owner of the company to assign the claimant only to set up and to repair the equipment rather than to supervise the four employees that he was also supervising.

10. The claimant then began to tell the supervisor as well as employees that he was going to resign.

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

11. On March 25, 2003, the claimant was asked to attend a meeting with his supervisor in the corporate office.

12. The meeting was to confirm the framework of the claimant's new job description.

13. The claimant and the supervisor discussed the claimant's job performance. The claimant became upset and told the supervisor that he could not take it anymore and that he quit. The claimant then left the meeting.

14. The claimant saw the president of the company shortly after the meeting and told him that he could not take the supervisor anymore.

15. The employer considered the claimant's actions to be a resignation and asked the claimant to return the van and other company property, which he did.

16. The claimant called the owner of the company but he would not accept the claimant's calls because he was not going to allow the claimant to return to his position.

Board's Decision, September 8, 2003, Findings of Fact (F.F.) Nos. 1–16, at 1–2.

The Board affirmed the referee's decision on September 8, 2003. The Board found that Claimant was not discharged from his employment, that he quit his position when he told the supervisor that he quit. Board's Decision at 2. The Board also found that Claimant failed to demonstrate a necessitous and compelling reason for voluntarily quitting his employment. Board's Decision at 3.

On appeal, Claimant contends that the Board erred in determining that he voluntarily terminated his employment, when he did not follow the voluntary termination procedures set by the company and the company refused to accept the withdrawal of his resignation. Claimant further contends that the Board erred in determining that his voluntary termination was not due to a necessitous and compelling reason due to an intolerable conflict with his supervisor and/or due to Claimant's medical condition.[2]

Section 402 of the Law, 43 P.S. § 802(b), states that an employee shall be ineligible for compensation for any week:

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature....

In *Charles v. Unemployment Compensation Board of Review*, 122 Pa.Cmwlth. 439, 552 A.2d 727 (1989), we found that:

In a voluntary quit case, this court must first determine whether the facts surrounding petitioner's separation from employment constitute a voluntary resignation or a discharge.... Where an employee, without action by the employer, leaves or quits work, the employee's action is considered voluntary under the law.... Where an employee resigns in order to avoid the chance of being fired, that employee is deemed to have voluntarily quit.

*Charles* at 729 (citations omitted). *See also, Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 167 Pa.Cmwlth. 386, 648 A.2d 124

---

2. Our review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987).

(1994) (benefits granted claimant because discharge was imminent).

 Initially, Claimant contends that his separation from his employment was not voluntary. Claimant bears the burden of proving his contention that his separation was involuntary. *Helsel v. Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 320, 421 A.2d 496 (1980). "A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment. In determining the intent of the employee, the totality of the circumstances surrounding the incident must be considered." *Fekos Enterprises v. Unemployment Compensation Board of Review,* 776 A.2d 1018, 1021 (Pa.Cmwlth.2001) (citations omitted).

The Board found the testimony of Ron Morosko (Morosko), Claimant's Supervisor, credible. Morosko testified in pertinent part as follows:

Before we could pretty much get through any of that, Don got upset, had some choice words.

. . .

Said it was bullshit, you know. I do believe I was called an asshole. Then he got up and said I'm done, I quit. He said he was having a nervous breakdown and it was all pointing to me. . . . After that he walked out. . . .

Notes of Testimony, June 11, 2003 (N.T.), at 33.

The Claimant also testified as follows:

I ran into Keith Lozell, which is president of the company.

. . .

I told him that I'd just about had enough of him. I can't take this no more.

. . .

And he's like who's him, and I said Ron Morosko.

. . .

I just can't take it anymore, and——

. . .

And that I felt like I was on the verge of a nervous breakdown.

. . .

He pretty much just closed the door behind me as I walked out the front door.

N.T. at 16.

 A claimant who stated that he quit and walked off the job is not considered an employee thereafter. A company policy that requires an employee to give two-weeks notice when leaving its employment is for the protection of the employer, not the employee. An employee cannot use such policy to his benefit after he has realized that quitting his employment was in error.

 Claimant also contends that he is entitled to benefits due to the fact that he attempted to revoke his resignation before the employer took steps to replace him. This is not quite accurate. An employee who revokes his resignation before the "effective date" of his resignation and before the employer took steps to replace him is entitled to benefits. *See PECO Energy Co. v. Unemployment Compensation Board of Review,* 682 A.2d 40 (Pa.Cmwlth. 1996). In the present controversy, Claimant only attempted to revoke his resignation after he had already left his position as shown by his returning his van and equipment and Employer's acceptance of which indicates Employer's acceptance of the resignation as final. Claimant's attempt to revoke after Employer's acceptance of the resignation fails because it is too late. The resignation became effective when it was clearly accepted.

 Once it is determined that Claimant voluntarily terminated his em-

ployment, the Claimant bears the burden of proving "a necessitous and compelling reason for voluntarily terminating the employment relationship." *Mutual Pharmaceutical Company v. Unemployment Compensation Board of Review*, 654 A.2d 37, 39 (Pa.Cmwlth.1994). Claimant must establish both that he acted with ordinary common sense in quitting his job and that he had made a reasonable effort to preserve his employment. *Stiffler v. Unemployment Compensation Board of Review*, 64 Pa.Cmwlth. 44, 438 A.2d 1058 (1982). Multiple causes, which as individual causes are not necessitous or compelling, do not in combination become necessitous and compelling. *Koman v. Unemployment Compensation Board of Review*, 61 Pa. Cmwlth. 604, 435 A.2d 277 (1981).

First, Claimant contends that he had a necessitous and compelling reason for his voluntary termination due to an intolerable conflict with his supervisor.

▆▆ In the present controversy, the Board found that Claimant told his supervisor that he quit. The Board also determined that Claimant later told the president of the company that he could not take the supervisor anymore. A review of the record reveals that there is nothing to support Claimant's position that Morosko made his working conditions intolerable or that Morosko acted in a profane or abusive manner toward Claimant. Mere dissatisfaction with one's working conditions is not a necessitous and compelling reason for terminating one's employment. *McKeown v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 617, 442 A.2d 1257 (1982).

Next, Claimant contends that he had a necessitous and compelling reason for terminating his employment due to his medical condition. In *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982), our Supreme Court stated that Genetin had to prove three elements in order to qualify for unemployment compensation benefits upon quitting his employment for medical reasons. He had to prove that: 1) he had a certifiable health condition which rendered him unable to perform his normal job duties; 2) he had made the employer aware of the specifics of said health condition; and 3) he had been available for any reasonable accommodation made by the employer which would allow the claimant to continue to work. *Id.*

In the present controversy, Claimant may have had a medical condition, but that was not the reason for his voluntary termination. There was no evidence of record which showed that Claimant had informed employer that he was leaving due to his health condition or that he asked for or was willing to accept reasonable accommodations from the employer due to Claimant's health condition before leaving his position.

All credibility determinations are made by the Board. The weight given the evidence is within the discretion of the factfinder. *Fitzpatrick v. Unemployment Compensation Board of Review*, 150 Pa. Cmwlth. 591, 616 A.2d 110 (1992). The Board is the ultimate factfinder. *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982). The Board determined that Claimant voluntarily left his employment. A review of the record reveals that the Board's findings were supported by substantial evidence.

Accordingly, we affirm.

## ORDER

AND NOW, this 26th day of May, 2004, the order of the Unemployment Compen-

sation Board of Review in the above-captioned matter is affirmed.