IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ProGuard Warranty, Inc.,      :
             Petitioner    :
                              :
       v.                     :
                              :
Unemployment Compensation    :
Board of Review,              :   No. 9 C.D. 2016
           Respondent :   Submitted: July 22, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                FILED: August 16, 2016


ProGuard Warranty, Inc. (Employer) petitions for review from the Unemployment Compensation Board of Review's (Board) order finding that Anthony J. Caligiuri (Claimant) is eligible for unemployment compensation benefits because he did not quit but was discharged from his employment.[1] For the reasons that follow, we affirm.

---

[1] *See* Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week ... (e) [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...."

Claimant was employed as a full-time sales representative for Employer until March 16, 2015, when he was purportedly terminated. Claimant filed for unemployment compensation benefits and the Department of Labor and Industry issued a notice of determination granting him benefits. Employer appealed.

Before a Referee, John Todd (Todd), Employer's Vice President of Sales, testified that a meeting had been called on March 16, 2015, to discuss a promotion to the position of regional manager. At this meeting was Dominic Limongelli, Employer's President, and Joseph Limongelli, its Chief Executive Officer. Todd testified that Claimant declined the promotion because he was interested in a career wholesaling cars. Claimant was then asked if he was involved with any other warranty companies or other outside interests, which Claimant denied. This line of questioning went on for approximately five to ten minutes, after which Claimant stated something to the effect of "I don't need this; I'm out of here." (Reproduced Record (R.R.) at R4.) He was then asked to turn in his company phone and any other company materials, and Todd asked Claimant to sign a voluntary resignation letter, but Claimant refused. Todd admitted that Claimant did not leave the premises right away.

Employer's President, Dominic Limongelli (President), testified that during the meeting, they initially spoke to Claimant about the regional manager position, but Claimant indicated that he was interested in wholesaling cars. Some of the President's contacts had previously informed him that Claimant was involved with an LLC that was a third-party administrator of one of Employer's

2

products, a violation of Claimant's non-compete agreement. The President questioned Claimant on this issue, but Claimant denied any involvement. After some time, Claimant said something to the effect of "I'm done. I'm done here." (R.R. at R18.) The President then testified that he asked the office manager to gather paperwork for Claimant to sign and told Claimant to turn in his company phone and supplies. The President testified that he did not believe the voluntary resignation form was already in the room when the meeting started. He admitted that if he had proof that an employee was working for another company, the employee would be terminated.

Employer's Chief Executive Officer, Joseph Limongelli (CEO), testified that Claimant was questioned during the meeting about starting an LLC. When Claimant said "that's it, I'm done," he assumed Claimant quit, so the CEO left the meeting, calculated Claimant's final commission check and gathered his company belongings.

As to the events that occurred at that meeting, Claimant testified that when he was called into the meeting, he believed that he was going to receive a raise. Claimant did not want to accept the regional manager position because he would not make as much money and the last person in that position did not last long. Claimant admitted that he told Todd that he was considering opening up a car lot, but that this would be as a part-time job on his own time. He was then interrogated for 45 minutes about owning, being involved in or working for another warranty company, which Claimant denied. Claimant denied making any statement to the effect of "that's it" or "I'm done." (R.R. at R24.) Claimant

3

testified that Employer had the voluntary resignation letter already prepared and in the room, and Todd asked Claimant to sign it. After Claimant read the letter, he refused to sign it and instead wrote "will not sign or I will not resign" on the letter. (R.R. at R9.) Employer then asked Claimant to turn in his company belongings, and Claimant assumed this meant he was fired. Claimant then told Employer that he wanted his last check and a copy of his non-compete agreement. Claimant waited for approximately one-half hour until he received those items and then left the premises.

Crediting Employer's testimony, the Referee concluded that Claimant voluntarily quit without a necessitous and compelling reason and, therefore, denied benefits under Section 402(b) of the Law.[2] The Referee found that while Claimant may not have used the words "I quit," he did inform Employer that he was done. The Referee also found that continuing work was available for Claimant had he not voluntarily quit.

Claimant appealed to the Board, which made its own findings and reversed.[3] In its decision, the Board found that Claimant did say "I don't need this. I'm out of here," but the Board found in so stating that Claimant did not intend to

---

[2] 43 P.S. §802(b). Section 402(b) provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week ... (b) [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."

[3] The Board is the ultimate fact-finder, with the power to substitute its judgment for that of a referee on both disputed facts and credibility determinations. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385-88 (Pa. 1985).

quit, but instead that he was no longer going to be quizzed about forming a new warranty company. It also found that he did not quit because he refused to sign a voluntary resignation form and did not leave the premises immediately after the meeting, but remained for at least one-half hour. The Board credited Claimant's testimony that he reasonably believed he was fired after Employer asked him to turn in his company property. The Board also found that Employer failed to present any credible testimony or evidence that Claimant was fired for willful misconduct. Employer then filed this appeal.[4]

On appeal, Employer argues that the Board erred in reversing the Referee's finding that Claimant voluntarily quit in light of the uncontroverted evidence that the Board found that Claimant stated "I don't need this. I'm out of here," and then left the meeting. According to Employer, this statement clearly evidenced Claimant's intention to quit and, therefore, the Board's decision lacks a proper evidentiary basis.

In determining whether a claimant quit or was discharged, the claimant bears the burden of proving that his separation from employment was, in fact, a discharge. Once this burden is met, the burden shifts to the employer to

---

[4] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

prove that the claimant was discharged for willful misconduct. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 224 (Pa. Cmwlth. 2012). "A voluntary quit requires a finding that the claimant had a conscious intention to leave employment." *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 (Pa. Cmwlth. 2010) (citing *Fekos Enterprises v. Unemployment Compensation Board of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001)). Whether a claimant's separation from employment is the result of a voluntary resignation or a discharge is a question of law subject to this Court's review and must be determined based upon "the totality of the circumstances surrounding the incident." *Procyson*, 4 A.3d at 1127 (citing *Fekos*, 776 A.2d at 1021).

Here, the totality of the circumstances supports the Board's conclusion that Claimant did not voluntarily quit, but was discharged by Employer. In doing so, the Board credited Claimant's testimony that he never told Employer that he was quitting, and his statement that "I don't need this. I'm out of here" only ended his interrogation, not his employment. That he did not intend to quit and that he was discharged is further supported in that Employer admitted that immediately after the interrogation, it presented Claimant with a voluntary resignation letter, which he refused to sign but instead wrote "I will not sign or I will not resign." Claimant also did not leave the premises immediately after the conclusion of the meeting. This amounts to substantial evidence to support the Board's conclusion that Claimant did not intend to quit. Moreover, the Board also credited Claimant's testimony that he believed that he was fired after Employer admittedly told him to turn in his company phone and other supplies.

6

We are bound to view the evidence and every reasonable inference deducible therefrom in the light most favorable to Claimant as the prevailing party. *Sanders v. Unemployment Compensation Board of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999). As such, there is substantial evidence in the record to support the Board's finding that Claimant is eligible for benefits because he was discharged and did not voluntarily quit.[5]

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

---

[5] The issue of whether the Board erred in finding that Employer failed to establish that Claimant was discharged due to willful misconduct was not raised in Employer's statement of questions involved or elsewhere in its brief. As such, the issue has been waived. *See* Pa. R.A.P. 2116(a); *see also VanDuser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ProGuard Warranty, Inc.,  :
      Petitioner :
         :
   v.     :
         :
Unemployment Compensation :
Board of Review,   :
    Respondent : No. 9 C.D. 2016

## **O R D E R**

AND NOW, this 16th day of August, 2016, the order of the Unemployment Compensation Board of Review in the above-captioned matter dated December 3, 2015, is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge