# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Cimino,               :
              Petitioner     :
              :
        v.             :     No. 1748 C.D. 2018
              :     Submitted: June 7, 2019
Unemployment Compensation     :
Board of Review,             :
             Respondent    :

**BEFORE:**    **HONORABLE P. KEVIN BROBSON, Judge**
                  **HONORABLE PATRICIA A. McCULLOUGH, Judge**
                  **HONORABLE MICHAEL H. WOJCIK, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: August 7, 2019**

Petitioner Joseph J. Cimino (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of the Unemployment Compensation Referee (Referee), denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] For the reasons set forth below, we affirm.

Claimant applied for unemployment compensation benefits after separating from his position as a controller at Field Environmental (Employer). (Certified Record (C.R.), Item No. 9 at 1.) The Altoona UC Service Center (Service

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Center) found Claimant ineligible for unemployment compensation benefits. (C.R., Item No. 4 at 1.) The Service Center determined that the benefit payments made to Claimant were "fault overpayments" under Section 804(a) of the Law[2] because Claimant had failed to communicate to the Service Center that he had resigned his position with Employer. (*Id.* at 3.) Claimant appealed the Service Center's determination. (C.R., Item No. 5 at 1.) A Referee conducted a hearing, at which time Claimant and Employer presented testimony. (C.R., Item No. 8.)

Claimant testified that he did not quit his position. (*Id.* at 2.) He took an extended vacation to the Philippines beginning on December 18, 2017. (*Id.*) Claimant testified that Employer and his co-workers knew about his extended travel plans and that he would continue to work with Employer upon his return. (*Id.* at 2, 4.) Claimant trained new personnel to cover his position during his trip. (*Id.* at 3.) Claimant, however, did not intend to retire in the Philippines, and he spoke at work only of how nice it would be to retire in the Philippines due to friendships there and the low cost of living in the country. (*Id.* at 3-4.) Claimant sent an email to a co-worker about his approximate return date, which Claimant calculated from his 30-day travel visa. (*Id.* at 4-5.) Claimant emailed Employer around January 15, 2018, to inform it that he would return to work on approximately January 23, 2018. (*Id.* at 3.) Employer's president, Mitchell Brourman, responded, informing Claimant that he no longer had a position with Employer. (*Id.*) Claimant did not receive any type of termination notice from Employer. (*Id.* at 5.)

---

[2] Section 804(a) of the Law addresses "fault overpayments" and provides, in part:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue.

2

During cross-examination, Claimant testified that he did not provide Employer with any information regarding his travel visa. (*Id.*) Additionally, Claimant did not have any documentation showing that he requested time off for an extended vacation from Employer. (*Id.* at 6.) Claimant knew about the rules set forth in the employee manual that instructed employees how to properly request time off through the Time Force Automated System, Employer's system for employees to request time off of work. (*Id.*) Claimant previously utilized the Time Force Automated System to request vacation time. (*Id.*)

Mitchell Brourman, Employer's president, testified on behalf of Employer. He testified that Claimant informed his colleagues in the summer of 2017 that he would be retiring at the end of 2017 and moving to the Philippines. (*Id.* at 7, 8.) Claimant kept a calendar in his cubicle counting down the days until his departure. (*Id.* at 7-8.) Claimant participated in several meetings to determine how work would be distributed after he left. (*Id.* at 8.) Claimant spoke with Employer's president about his plans to retire, and Employer's president never asked Claimant to return to his position after he returned from his trip to the Philippines. (*Id.* at 9.) Additionally, Employer hired and trained additional personnel to take over Claimant's responsibilities before Claimant's departure. (*Id.* at 8.)

Employer admitted evidence into the record before the Referee, including a memo from Keith Freeze, Employer's external accountant, regarding Employer's preparations for Claimant's departure from Employer; a time sheet detailing when Claimant had taken vacation in 2017 using the Time Force Automated System; and the employee manual. (*Id.* at 11-12.)

3

Following the hearing, the Referee issued a decision concluding that Claimant was ineligible for unemployment compensation benefits. (C.R., Item No. 9 at 3.) The Referee issued the following findings of fact:

1. The claimant was employed between February 28, 2014[,] and December 18, 2017[,] as a Controller for Field Environmental at a final hourly rate of $27.00.

2. As a controller, the claimant was in tune with being able to take time off on the employer's time force system.

3. The claimant used the system before and then over the summer of 2017 he announced his retirement and that he was going to the Philippines to live.

4. The employer brought in people to cover for the claimant and he trained his replacement before he left.

5. The employer thought the claimant was going to leave in November of 2017 but the claimant finally left on December 18, 2017, without notice.

6. The employer did not know that the claimant had a 30-day visa and the claimant did not tell the employer what his plans were when he would retire.

7. Unbeknownst to the employer, the claimant wrote to the employer on January 15, 2018[,] and the employer responded talking about what the claimant had done in saying that he was surprised he came home earlier than expected.

8. The claimant then made an application for benefits dated February 4, 2018.

(*Id.* at 1-2.) The Referee offered the following reasoning:

The employer's testimony is believed over the claimant's. The Referee believes that the claimant announced his retirement to everyone over the summer of 2017 and the employer then took steps to bring on his replacement. The claimant then left unexpectedly on the 18th of December

4

and the employer then heard from claimant about January 15, 2018[,] in an email.

(*Id.* at 3.) The Referee also concluded, differently from the Service Center, that the benefits paid to Claimant were non-fault overpayments because "[f]ault on the part of claimant had not been established."[3] (*Id.*)

Claimant appealed the Referee's decision to the Board. (C.R., Item No. 10.) The Board remanded the matter to a Referee to hold a second hearing in order "to allow Claimant the opportunity to request a subpoena to obtain, from . . . Employer, an email between [Claimant and Employer] that allegedly discussed [Claimant's] vacation plans as well as his intent to return to work." (C.R., Item No. 12.) During the second hearing before the Referee, only Claimant testified, and both Claimant and Employer entered evidence into the record.

Claimant testified that he believed that the subpoenaed email illustrated that he informed Employer when he would be leaving for his trip and when he would be returning to work. (C.R., Item No. 16 at 2-3.) After Claimant emailed Employer's vice president about his approximate return date, the vice president informed Claimant that other employment plans were made and Claimant did not have a position with Employer. (*Id.* at 3.)

On cross-examination, Claimant testified that nowhere in the subpoenaed email was there an explicit notice of his vacation departure date, reference to any prior conversations that were held between Employer's vice

---

[3] Section 804(b)(1) of the Law addresses "non-fault overpayment" and provides, in part:

Any person who other than by reason of his fault has received with respect to a benefit year any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year.

president and himself, nor any information regarding his approximate return to work date. (*Id.* at 8-9.) Additionally, Claimant emailed his ex-wife on May 10, 2017, informing her that he would be retiring in the next few months and leaving for the Philippines. (*Id.* at 12.) Claimant testified that he lied to his ex-wife within this email so that she would sign divorce papers. (*Id.*)

Claimant entered evidence into the record before the Referee to show that he had communicated with a co-worker about his approximate date of return to work and had communicated with Employer's vice president about work-related questions while on his trip. (*Id.* at 3.)

Employer entered the following exhibits into the record before the Referee: (1) the subpoenaed email that allegedly demonstrated that Claimant informed Employer of the dates of his departure and return; and (2) a May 10, 2017 email between Claimant and his ex-wife, in which Claimant stated that he would be retiring in the next few months and was going to travel to the Philippines. (*Id.* at 12.) Employer did not testify. (*Id.* at 13.)

The Board, in considering all evidence from both the first and second Referee hearings, affirmed the Referee's decision. (C.R., Item No. 17.) The Board adopted and incorporated the Referee's findings of fact and offered the following reasoning:

> In giving consideration to the entire record, including testimony and evidence received at the [r]emand hearing, the Board concludes that the determination made by the Referee is proper . . . . The Board finds credible . . . employer's testimony and evidence. The claimant did not request time off using the employer's time force system when he left on December 18, 2017, to travel to the Philippines to be with his fiancé. The claimant intended to quit and retire, which was what he had been intending to do as early as May 2017.

6

(*Id.*)

On appeal to this Court,[4] Claimant essentially argues: (1) the Board's finding that Claimant voluntarily quit his position with Employer is not supported by substantial evidence; and (2) the Board erred in concluding that Claimant voluntarily quit his position with Employer.

First, we will consider whether substantial evidence supports the Board's finding that Claimant intended to voluntarily quit his position and retire when he departed for the Philippines. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). Additionally, "[t]he fact that . . . [a party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994).

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

In an unemployment compensation case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Miller v. Unemployment Comp. Bd. of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979).

Here, Claimant argues that the Board's finding is not supported by substantial evidence because he claims that he informed Employer that he was going on an extended trip to the Philippines, that he would not be retiring, and that he would return to work after his trip. Employer, however, presented testimony during the first hearing before the Referee, that Claimant (1) informed individuals within the office that he would be retiring and moving to the Philippines, (2) displayed a calendar in his cubicle to keep track of how many days until his departure, (3) discussed his plan to retire and move to the Philippines with Employer's president, (4) participated in several meetings to determine how work would be distributed after his departure, and (5) stated in the summer of 2017 that he would be retiring at the end of 2017. (C.R., Item No. 8 at 7-11.) Employer also presented testimony that its president never asked Claimant to return to his position after he returned from his trip to the Philippines. (*Id.* at 11.) The Board found Employer's testimony and evidence credible, and such a finding is binding on appeal. *Miller*, 405 A.2d at 1036. This evidence, therefore, constitutes substantial evidence to support the Board's finding that Claimant had voluntarily quit his job.

Next, we consider whether the Board erred in concluding that Claimant voluntarily left his position. Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether an employee voluntarily quit or was involuntarily discharged by the employer is a question of law and is determined by considering the totality of the circumstances surrounding the end of the claimant's employment. *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996).

The claimant bears the burden to prove that his separation from employment was involuntary or that he had a necessitous and compelling reason to voluntarily quit his position with the employer. *Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004). A finding of voluntary separation is precluded unless there is a conscious intention to leave the employment. *Fekos Enters. v. Unemployment Comp. Bd. of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001). An employee is deemed to have voluntarily quit his position when, without action from the employer, he leaves or quits work without informing his employer when or if he is planning to return within a reasonable time. *Iaconelli v. Unemployment Comp. Bd. of Review*, 892 A.2d 894, 896 (Pa. Cmwlth. 2006); *see also Simpson v. Unemployment Comp. Bd. of Review*, 395 A.2d 309, 310-11 (Pa. Cmwlth. 1978) (holding employee voluntarily quit his position after he failed to come to work for eleven days and failed to communicate to employer his return to work date).

Here, Claimant argues that the Board erred in concluding that he voluntarily quit. Instead, Claimant argues that Employer fired him upon his return from the Philippines. The Board found that Claimant announced his retirement

9

during the summer of 2017 and stated that he was going to live in the Philippines. (Finding of Fact (F.F.) No. 3.) The Board also found that Claimant left on December 18, 2017, without notice and without telling Employer his plans; Claimant then contacted Employer on January 15, 2018, almost one month later, informing Employer of his return. (F.F. Nos. 5-7.) Based upon the totality of the circumstances as found by the Board, the Board did not err in concluding that Claimant voluntarily quit his position with Employer.

Accordingly, we affirm the order of the Board.

P. KEVIN BROBSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Cimino,               :
                     Petitioner :
                                :
       v.                       :    No. 1748 C.D. 2018
                                :
Unemployment Compensation       :
Board of Review,                :
                    Respondent  :

## **O R D E R**

AND NOW, this 7th day of August, 2019, the order of the Unemployment Compensation Board of Review is AFFIRMED.

P. KEVIN BROBSON, Judge
