IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Ross,                          :
                    Petitioner           :
                                         :
        v.                               :
                                         :
Unemployment Compensation                :
Board of Review,                         :      No. 1571 C.D. 2018
                    Respondent           :      Submitted: May 24, 2019


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                  FILED: October 11, 2019


            Robert J. Ross (Claimant), *pro se*, petitions for review of the October

5, 2018 order of the Unemployment Compensation Board of Review (Board)

affirming the determination of the referee finding Claimant ineligible for

unemployment compensation benefits under the Unemployment Compensation Law

(Law).[1]  Upon review, we affirm.

            Claimant was employed as a senior mortgage originator with PHH

Mortgage (Employer) from November 27, 2017 to June 4, 2018.  Certified Record

(C.R.), Item No. 13, Board's Decision & Order at 1, Board's Finding of Fact (F.F.

1.  In the latter part of May 2018, Claimant's supervisor asked Employer's Human

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§
751 – 919.10.

Resources (HR) department to arrange a meeting with Claimant in order to provide him with a counseling memo regarding his attendance, which constituted the first level of discipline under Employer's procedures. F.F. 2. This meeting was held on or around June 1, 2018, at which time Claimant was informed that he would be delivered a performance improvement plan, as his performance in May fell within the bottom 10% of Employer's sales floor. *Id.*

Following the meeting, Claimant e-mailed an associate HR business partner expressing concerns and requesting another meeting. F.F. 3. A subsequent meeting occurred on or about June 4, 2018, at which Claimant complained about the distribution of sales leads, the purported manipulation of his timecard by a supervisor and an alleged hostile work environment. *Id.* Employer permitted Claimant to stay home on June 5 and 6, 2018 while Employer investigated his concerns. F.F. 4. On or about June 5, Employer's associate HR business partner informed Claimant of Employer's determination that no hostile work environment existed and asked Claimant to report to work half an hour prior to the start of his shift on June 7, 2018 in order to provide him with the results of the investigation. *Id.* Employer determined that supervisors were adjusting timecards based on phone logs, resulting in discrepancies of a minute or two, but did not find that Claimant was owed any money. F.F. 5. Employer instructed the entire sales floor that timecards were not to be adjusted without actual verbal communication to serve as confirmation. *Id.* Employer further found that leads were distributed in accordance with performance metrics and determined that consultants with similar performance levels were treated the same. F.F. 6.

Employer met again with Claimant on June 7, 2018 as scheduled. F.F. 7. Claimant disagreed with Employer's findings but was expected to return to work.

*Id.* Claimant thereafter texted his Employer and asked to be "marked out" June 7, 2018, as he was not returning to work that day. *Id.* Employer treated this absence as unexcused, warranting level-two disciplinary action in the form of a written warning. *Id.* Claimant also asked to be "marked out" on June 8, 2018, resulting in a final warning from Employer. F.F. 8. The associate HR business partner communicated to Claimant by e-mail that his employment would be in jeopardy if he did not return. *Id.* Claimant failed to report to work on Monday, June 11, 2018, instead sending a text message to his supervisor asking to be "marked out" for the day without explanation. F.F. 9. Consequently, Employer terminated Claimant for failure to return to work. F.F. 10.

As a result of his separation from employment, Claimant applied for unemployment compensation benefits. C.R., Item No. 2, Internet Initial Claims at 1. The Unemployment Compensation Service Center of the Pennsylvania Department of Labor and Industry (Department) found that, under the circumstances of the case, Claimant's absenteeism constituted willful misconduct pursuant to Section 402(e) of the Law,[2] 43 P.S. § 802(e), thereby rendering Claimant ineligible for benefits. C.R., Item No. 6, Notice of Determination at 1. Claimant appealed to a referee and a hearing was held, at which Claimant and three witnesses for Employer testified. C.R. Item No, 10, Transcript of Testimony, 8/21/18 at 1. Subsequently, the referee issued a decision and order finding that Claimant voluntarily left his employment without necessitous and compelling cause and was, therefore, ineligible for benefits pursuant to Section 402(b) of the Law, 43 P.S. § 802(b). C.R., Item No. 11, Referee's Decision & Order at 2-3.

---

[2] Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e).

Claimant appealed the referee's denial of benefits to the Board. C.R. Item No. 12, Claimant's Appeal, 8/27/18. Thereafter, the Board issued a decision and order affirming the referee's decision, albeit on different grounds. C.R., Item No. 13, Board's Decision & Order at 1. The Board concluded that Claimant's refusal to return to work rose to the level of willful misconduct and, therefore, rendered him ineligible for benefits under Section 402(e) of the Law. *Id.* at 3.

On appeal,[3] Claimant requests that this Court reverse the Board's determination that Claimant is ineligible for benefits. Claimant's Brief at 11-12. Claimant argues that the Board erred when it considered this matter to be a case of willful misconduct rather than one of a voluntary termination. *Id.* at 10. Claimant argues that the Board erred in disregarding the referee's findings of fact concerning the actual workplace conditions, while considering those testified to by Employer's representatives. *Id.* at 10-11. In response, the Board asserts that the totality of the circumstances indicate that Claimant was terminated for willful misconduct. *See* Board's Brief at 7-9.

"The employer has the burden of proving that it discharged an employee for willful misconduct." *Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can

---

[3] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 1991); *see also* 2 Pa.C.S. § 704.

4

rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). Once an employer establishes a prima facie case of willful misconduct, the burden shifts to the claimant to prove good cause for his actions. *Downey v. Unemployment Comp. Bd. of Review*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"A determination of whether a claimant's separation from employment was a voluntary resignation or a discharge is made by examining the facts surrounding the claimant's termination of employment." *Pa. Liquor Control Bd. v. Unemployment Comp. Bd. of Review*, 648 A.2d 124, 126 (Pa. Cmwlth. 1994). Further, "[s]uch determination is a question of law to be made based upon the Board's findings." *Id.* "A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment." *Fekos Enters. v. Unemployment Comp. Bd. of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001). "In determining the intent of the employee, the totality of the circumstances surrounding the incident must be considered." *Id.*

As noted, Claimant essentially argues that the Board erred in denying him benefits, because he was forced to quit his employment due to Employer's alleged creation of a hostile work environment. *See* Claimant's Brief at 10-11. Claimant cites *Treon v. Unemployment Compensation Board of Review*, 453 A.2d 960 (Pa. 1982), in which the Pennsylvania Supreme Court stated that the Board "did not have the right to arbitrarily and capriciously disregard the findings of the referee when the referee listened to the testimony of the sole witness and observed his demeanor, and made findings of fact based upon that uncontradicted testimony."

5

Claimant's Brief at 11 (citing *Treon*, 453 A.2d at 962). Claimant asserts the alleged hostile work environment fostered by Employer "is not materially different" from the circumstances in *Treon*, where the employer expected the claimant to travel long distances to a new construction site. *Id.* Claimant also contends Employer's witnesses "arrived at the . . . hearing well scripted," "brought no records," and "claimed a set of discipline rules that nobody followed, because [the sales leads manager] controlled everything[.]" *Id.* Claimant claims the sales leads manager did not appear at the hearing and did not attempt to rebut Claimant's testimony regarding either him or the hostile work environment. *Id.*

We first note that Claimant's arguments that the Board disregarded the referee's findings and that the Board was not permitted to unilaterally "change" the case from a Section 402(b) voluntary quit case to a Section 402(e) willful misconduct case are without merit. Section 504 of the Law provides, in part:

> The [B]oard shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the [D]epartment or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence.

43 P.S. § 824. Therefore, the Board had the authority to modify the determination of the referee.

Further, Claimant's reliance upon *Treon* is misplaced, because, here, both sides presented testimony and, contrary to Claimant's assertions, his testimony was not uncontradicted. In *Peak v. Unemployment Compensation Board of Review*,

6

501 A.2d 1383 (Pa. 1985), the Pennsylvania Supreme Court explained that where testimony is conflicting, the Board is not bound by the facts found by the referee; rather, the Board is "the ultimate finder of fact with power to substitute its judgment for that of its referees on disputed facts." *Id.* at 1386-87; *cf. Griffith Chevrolet-Olds, Inc. v. Unemployment Comp. Bd. of Review*, 597 A.2d 215, 246 (Pa. Cmwlth. 1991) (holding that where referee's findings are based on uncontradicted evidence, Board may disregard those findings when it sets forth its reasons for reversal or the reason for reversal is clear from record). Consequently, the Board was not bound by the referee's findings.

An examination of the facts surrounding Claimant's separation from employment supports the Board's determination that Claimant was discharged due to willful misconduct, rather than that Claimant quit. Employer's associate HR business partner testified that Claimant only asked to be marked out for the day each time he failed to report to work, and also that she had warned Claimant that his job would be in jeopardy if he did not return to work. C.R. Item 10, Transcript of Testimony at 9-10. Further, although Claimant testified that "this was a forced quit because of the hostile situation," Claimant reported on his Internet Initial Claims form that he had been discharged due to tardiness. *Id.* at 29; Internet Initial Claims, 6/18/18 at 2. Claimant also indicated to Employer by e-mail on June 4, 2018 that he was "not resigning or leaving th[e] organization," and that he "look[ed] forward to resuming [his] duties" after the issues were addressed. C.R., E-mail, 6/4/18. Thus, the totality of the circumstances surrounding Claimant's separation from employment substantially support the finding that Claimant lacked the requisite intention to quit. *See Fekos Enters.*, 776 A.2d at 1021; *Pa. Liquor Control Bd.*, 648 A.2d at 126. Therefore, we find no error in the Board's determination that

Claimant's separation was due to a termination.

Notably, Claimant does not challenge the determination that his actions constituted willful misconduct. To the extent Claimant's argument regarding a hostile work environment could be construed as a contention that he had good cause for his actions, this argument fails. Although Claimant alleged a hostile work environment, the Board did not credit Claimant's assertion in this regard, but found instead that Claimant failed to report to work because he wanted to be assigned to a different supervisor or to be given a new position within the company, for which he did not qualify. F.F. 11 & 12. These reasons do not constitute good cause for failing to report to work. *Green Tree Sch. v. Unemployment Comp. Bd. of Review*, 982 A.2d 573, 578 (Pa. Cmwlth. 2009) (stating, "[e]mployees do not enjoy a general right to participate in management decisions, such as how many staff are needed in another department").

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Ross,                         :
                    Petitioner          :
                                        :
            v.                          :
                                        :
Unemployment Compensation               :
Board of Review,                        :       No. 1571 C.D. 2018
                    Respondent          :

# O R D E R

AND NOW, this 11th day of October, 2019, the October 5, 2018 decision and order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge