# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason J. Oehling, : 
                 Petitioner : 
                 : 
         v. :    No. 1596 C.D. 2018
                 :    Submitted: April 26, 2019
Unemployment Compensation : 
Board of Review, : 
                 Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: July 18, 2019**

Petitioner Jason J. Oehling (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of the Unemployment Compensation Referee (Referee), denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant applied for unemployment benefits on February 4, 2018, after separating from his position as a landscaper at Steel City Landscape (Employer) due to transportation issues. (Certified Record (C.R.), Item No. 1 at 1, Item No. 3 at 3.) The UC Service Center (Service Center) determined that Claimant was eligible for unemployment compensation benefits for the week of February 4, 2018, until February 10, 2018. (C.R., Item. No. 4 at 1.) Employer appealed the Service Center's determination, and a Referee conducted a hearing. (C.R., Item No. 5.)

The Referee admitted into the record a series of emails between Claimant and the General Manager, explaining that Claimant would receive his final partial paycheck upon Claimant returning his uniforms to Employer. (C.R., Item No. 8 at 3, 14, 21-25.) The emails showed that on January 15, 2018, the General Manager reached out to see when Claimant would return the uniforms to Employer, to which Claimant responded that he was not able to send the uniforms via mail because he did not have the money for postage. (*Id.*) Employer followed up with Claimant regarding the uniforms, and Claimant responded that he did not have transportation either to mail or physically return the uniforms to Employer in February 2018. (*Id.*) In addition, Claimant emailed the General Manager on February 28, 2018, inquiring when spring cleanup work would begin with Employer. (*Id.*)

Both Claimant and Employer's representative testified at the hearing. (C.R., Item No. 8.) Claimant testified to the circumstances surrounding his separation from employment, asserting that he did not voluntarily quit his position with Employer. (*Id.* at 9.) Claimant testified that he last worked for Employer on November 22, 2017. (*Id.* at 5.) Claimant informed the Operations Manager on November 25, 2017, that he did not have transportation to come to work on the

2

following Monday because the engine in his car blew up on Thanksgiving night. (*Id.* at 6.) Employer told him that it would notify him when plowing work would become available for him with Employer. (*Id.*) Claimant salvaged his car for scrap on approximately November 27, 2017. (*Id.*) Claimant notified Employer that he obtained new transportation and was ready and able to work in January 2018. (*Id.*) As to alternate means of transportation, Claimant attempted to find co-workers with whom to carpool to work. (*Id.*) Employer told him that the company would not pick him up for work due to the long-distance commute. (*Id.*)

Jordan Kinzler, Employer's Operations Manager, testified on behalf of Employer. (*Id.* at 2.) The Operations Manager testified that he had received a text message from Claimant over the weekend informing him that Claimant was having car trouble and that Claimant would not be at work the following Monday due to lack of transportation. (*Id.* at 7.) Claimant informed him that he did not live on a bus route. (*Id.*) The Operations Manager asked Claimant whether Claimant would be able to work for Employer if he did not have transportation, and Claimant responded that he would not be able to work for Employer. (*Id.*) The Operations Manager testified that Claimant's answer was the end of Claimant's employment. (*Id.*)

In addition, the Operations Manager testified that he told Claimant that if he obtained new transportation and would like to return to working for Employer, Claimant need only to let Employer know. (*Id.*) Claimant stated in an email that he hoped to obtain new transportation in early January 2018. (*Id.*) At some point, Claimant handed in his uniforms and received his last paycheck, and Employer told Claimant to notify Employer if he obtained new transportation. (*Id.* at 8.) The Operations Manager testified that he was not aware of Claimant having ever

3

informed Employer that he had obtained new transportation in early January 2018 and was ready and able to work for Employer. (*Id.*) Employer usually has a problem finding people to work during the winter for snow plowing, so if Claimant was willing to work and had transportation, Employer would have employed him in January 2018. (*Id.*) Claimant emailed Employer sometime in February, stating that he had acquired a vehicle and was willing to work. (*Id.*) The Operations Manager contacted Claimant in March 2018 and offered him a job when the company started landscaping. (*Id.*)

Following the hearing, the Referee issued a decision, concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(b) of the Law. (C.R., Item No. 9.) Claimant appealed to the Board. (C.R., Item No. 10.) The Board affirmed the order of the Referee, concluding that Claimant was ineligible for benefits because he voluntarily separated from his position and failed to prove a necessitous and compelling reason to voluntarily quit. (C.R., Item No. 11.) In doing so, the Board issued its own findings of fact and conclusions of law. (*Id.*) The Board made the following findings of fact:

> 1. The claimant was last employed as a Landscaper by Steel City Landscape from October 5, 2017, at a final rate of pay of $14.25 per hour. His last day of work was November 22, 2017.
>
> 2. On November 23, 2017, the claimant's car broke down and was eventually taken for scrap.
>
> 3. On Sunday, November 25, 2017, the claimant informed the Operations Manager . . . that he had no transportation and would not be at work on Monday.

4

4.     The [Operations Manager] asked the claimant if he would be able to work for the employer without a vehicle and the claimant responded he would not.

5.     The claimant sent a message to the General Manager . . . on December 1, 2017.  The claimant indicated he was waiting for a partial check from the employer and he would be trying to save to buy a vehicle some time at the beginning of January.

6.     The [General Manager] responded and told the claimant that due to the length of his time off of work, he would need to return his uniform items to the employer.

7.     On approximately January 5, 2018, the claimant obtained a motor vehicle and was able to work.

8.     The employer had work available during the winter.

9.     On January 15, 2018, the [General Manager] followed up with the claimant, requesting to know when the uniform items would be returned.

10.     On January 16, 2018, the claimant responded that he got a ride to the post office to see how much it would cost to mail the uniform items to the employer, the cost was too great, and he would try to return them by mail in February.

11.     On February 6, 2018, the employer followed up and the claimant responded.  The claimant indicated that he did not have transportation to return the uniforms and that he could not get a ride to the employer.

12.     On February 28, 2018, the claimant messaged the [General Manager] inquiring when spring cleanup work would begin with the employer.

13.     In March of 2018, the [General Manager] contacted the claimant to ask if he was interested in work.

5

(*Id.* at 1-2.)  The Board offered the following reasoning:

> The claimant bears the burden of proof in these cases and the record reflects that the claimant voluntarily separated from the employer due, initially, to a lack of transportation.  During the weeks at issue,[2] the claimant was not working because he failed to inform his employer he had transportation, thereby voluntarily continuing his separation.  Accordingly, the Board makes its decision under Section 402(b) of the Law.
>
> . . . .
>
> Although lack of transportation may be cause of a necessitous and compelling nature to quit employment, the claimant was not employed during the weeks at issue due to lack of transportation.  The claimant testified that he obtained a motor vehicle the first week of January.  The Board does not find credible the claimant's testimony that he informed the employer in January that he was able and available for work, and his failure to inform the employer he had transportation and was available to work is the reason for the claimant's unemployment during the weeks at issue.  The claimant did not show he had a necessitous and compelling reason to not report to the employer that he could return to work, and the Board concludes the claimant should be found ineligible for benefits.

(*Id.* at 2-3.)

Claimant requested the Board to reconsider its decision and attached additional evidence to his request in an attempt to establish that he had obtained new transportation on March 26, 2018.  (C.R., Item No. 12.)  The Board denied

---

2 The "weeks at issue" include the period of time for which Claimant applied for unemployment compensation benefits, February 4, 2018, until February 10, 2018.  (C.R., Item No. 11 at 1.)

6

Claimant's request for reconsideration. (C.R., Item No. 14.) Claimant petitioned this Court for review.

On appeal to this Court,[3] Claimant essentially argues the following: (1) the Board's finding of fact number 7 is not supported by substantial evidence because Claimant did not obtain new transportation until March 26, 2018;[4] (2) the Board erred in concluding that Claimant voluntarily quit his job; and (3) the Board erred in concluding that Claimant did not have a necessitous and compelling reason for his voluntary separation from Employer.[5]

First, we will address whether substantial evidence exists to support the Board's finding of fact number 7. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] While Claimant fails to challenge any individual findings of fact specifically, it appears Claimant intends to challenge finding of fact number 7, which provides that he had obtained transportation on January 5, 2018, and was able to work as of this date.

[5] By order dated December 12, 2018, this Court directed the parties to "address whether the appeal is untimely in their principal briefs on the merits." The Board explains that Claimant filed a timely appeal, but the Board's decision and order contained a typographical error as to the date. The Board issued its decision and order on October 31, 2018 (not October 3, 2018, as stated therein). Claimant filed a timely appeal on November 27, 2018.

as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

"Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when [the documents] are not part of the certified record" before the Referee. *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012). A claimant, therefore, must present all evidence at the earliest possible time because a Board does not have good cause to grant a claimant's request for reconsideration when the claimant "did not act to protect its own interests by presenting crucial evidence at the initial hearing and asserted no reason for its failure to make the 'new' evidence available at that time." *Georgia-Pacific Corp. v. Unemployment Comp. Bd. of Review*, 630 A.2d 948, 953 (Pa. Cmwlth. 1993) (citing *Dep't of Auditor Gen. v. Unemployment Comp. Bd. of Review*, 484 A.2d 829, 830 (Pa. Cmwlth. 1984)).

Here, Claimant argues that the Board's finding of fact number 7 is not supported by substantial evidence because Claimant alleges he obtained new transportation on March 26, 2018, and not on January 5, 2018. As the basis of his argument, Claimant directs the Court to a receipt for the purchase of a vehicle on March 26, 2018, which he attached to his request for reconsideration before the Board. (C.R., Item No. 12.) The Board, however, denied that request, and Claimant does not now argue that the Board abused its discretion when it did so. The evidence presented by Claimant to demonstrate that he acquired transportation in March 2018, therefore, was not part of the record before the Board or Referee. This Court cannot consider this non-record evidence in determining whether substantial evidence

8

supports the Board's finding of fact number 7. As for record evidence, Claimant testified before the Referee that he had obtained new transportation on approximately January 5, 2018, (C.R., Item No. 11 at 1), and such evidence constitutes substantial evidence to support the Board's finding of fact number 7.

We now consider Claimant's argument that he did not voluntarily quit, but rather, Employer terminated his employment.[6] Here, the parties misapprehended the Board's decision as a "voluntary quit" scenario, when instead the Board found it to be a "continuing separation" scenario. (*Id.* at 2.) The Board found that Claimant left work because of transportation problems and that, although he was not working for Employer when he filed for unemployment compensation benefits on February 4, 2018, Claimant had not resigned nor had Employer fired him. This case, therefore, presents an unusual scenario in which Claimant is in limbo, neither having been fired nor having resigned.

In instances where a claimant has not been fired nor resigned but is, nonetheless, separated from employment, this Court will determine the type of cases most analogous to the factual circumstances before us and apply the analysis employed in those types of cases to determine whether the claimant is entitled to

---

[6] Whether an employee voluntarily separated from employment or was involuntarily discharged is a question of law and is determined by considering the totality of the facts surrounding the end of the claimant's employment. *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996). The claimant bears the burden to prove either that his separation from employment was involuntary or that his separation from employment was voluntary but he had a necessitous and compelling reason to voluntarily separate from his position with his employer. *Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004). A finding of voluntary separation is precluded unless there is a conscious intention to leave the employment. *Fekos Enters. v. Unemployment Comp. Bd. of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001).

benefits.[7]  Here, the Board determined that Claimant's situation is most analogous to cases involving a voluntary resignation due to transportation problems.  (C.R., Item No. 11 at 3.)  We agree with the Board's assessment and, therefore, will consider whether the Board erred in concluding that Claimant did not have necessitous and compelling reasons for his separation from employment when he applied for benefits in February 2018.

Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."  Generally, when a claimant voluntarily leaves work, the claimant bears the burden to establish that he left work for cause of a necessitous and compelling nature in order to be entitled to benefits.  *Spadaro*, 850 A.2d at 859.  The claimant bears the burden to prove that he had a necessitous and compelling reason to voluntarily separate from his position with the employer.  *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). A claimant must demonstrate the following to establish a necessitous and compelling

---

[7] This Court utilized this "analogous case" approach in *Shaffer v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 1445 C.D. 2013, filed July 23, 2014).  In *Shaffer*, the injured claimant filed for unemployment compensation benefits after the employer filled her position when she was unable to return to work at full capacity.  The employer told the claimant that if she requested to return to working for the employer after she completely recovered from her injuries, the employer would see whether an alternate position was available within the company.  The claimant, therefore, was in limbo, as the employer had neither fired her nor had she resigned her position.  This Court determined that the claimant's case was most analogous to a case where a claimant had voluntarily resigned from her employment for medical reasons, and we analyzed the factual scenario accordingly.  Ultimately, this Court vacated the Board's order and remanded the matter for the issuance of a new decision in light of the requirements for a voluntary resignation for medical reasons.  Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

10

reason to voluntarily separate from his employment: (1) that circumstances existed that produced real and substantial pressure to terminate employment, (2) that like circumstances would compel a reasonable person to act in the same manner, (3) that the claimant acted with ordinary common sense, and (4) that the claimant made a reasonable effort to preserve his employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008) (en banc).

Issues with transportation to the workplace may qualify as a necessitous and compelling reason "only if it presents an insurmountable barrier to further employment despite an employee's reasonable effort to remedy it." *Thomas v. Unemployment Comp. Bd. of Review*, 560 A.2d 922, 924 (Pa. Cmwlth. 1989) (citing *Frable v. Unemployment Comp. Bd. of Review*, 416 A.2d 1164 (Pa. Cmwlth. 1980)). A claimant bears the burden to prove that his transportation problems constitute a necessitous and compelling reason. *Id.* A claimant must also demonstrate that he took reasonable steps to remedy the transportation problem before severing the employment relationship. *Frable*, 416 A.2d at 1167 (citing *Correa v. Unemployment Comp. Bd. of Review*, 374 A.2d 1017 (Pa. Cmwlth. 1977)).

Here, Claimant argues that the Board erred in determining that he did not have a necessitous and compelling reason for his continued separation during the weeks at issue because he did not have transportation until March 26, 2018. The Board, however, found that Claimant had obtained a vehicle on January 5, 2018, and was able to work.[8] (C.R., Item No. 11, Finding of Fact (F.F.) No. 7.) Claimant applied for unemployment compensation benefits on February 4, 2018. Initially

---

[8] As stated previously, this Court cannot consider the evidence regarding a vehicle purchase in March 2018, which Claimant attached to his request for reconsideration. Moreover, we note that a receipt for the purchase of a vehicle in March 2018 does not necessarily establish that Claimant did not have transportation available to him as of January 5, 2018.

11

Claimant's transportation problems might have qualified as a necessitous and compelling reason for voluntary separation from employment, because he did not have the means to obtain a new vehicle at that time, did not live on a bus route, and there was no option to commute to work either with co-workers or obtain transportation from Employer. Claimant, however, did not seek unemployment compensation benefits until after he obtained new transportation in January 2018. By the time Claimant applied for benefits, according to the Board's fact finding, his transportation problems had resolved. Subsequent to January 5, 2018, Claimant's separation from employment was not due to a lack of transportation but rather due to his failure to inform Employer of his ability to return to work. We accept, as we must, the Board's credibility determination as well as its findings, which are supported by the record, and we agree with the Board that Claimant did not prove a necessitous and compelling reason for his continued separation from employment during the weeks at issue.

For the above reasons, we affirm the order of the Board.

P. KEVIN BROBSON, Judge

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jason J. Oehling,                                   :
                          Petitioner           :
                                                           :
          v.                                             :          No. 1596 C.D. 2018
                                                           :
Unemployment Compensation           :
Board of Review,                                 :
                          Respondent          :

# **O R D E R**

AND NOW, this 18th day of July, 2019, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge