519 A.2d 532

Linda Bonanni, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Linda Bonanni, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs August 12, 1986, to Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*Evalynn B. Welling,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, December 22, 1986:

Linda Bonanni, the claimant, appeals from two orders of the Unemployment Compensation Board of Review (Board) which affirmed two decisions of the referee which denied the claimant benefits because she had voluntarily quit work without cause of a necessitous and compelling nature. Section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

Claimant was employed by Koolvent Aluminum Products, Inc. as a factory worker. She was responsible for placing various sized pieces of glass onto a washing belt. Claimant became pregnant in July of 1982. Because of complications relating to the pregnancy, claimant missed a number of days of work. She received an absenteeism warning pursuant to the employer's disciplinary policy. She eventually obtained a note from her doctor, dated November 11, 1982, which stated:

To Whom It May Concern:

Linda Bonanni was seen in our office today. She is pregnant, approximately four months. Has had fair amount of nausea and vomiting. On today's visit, her weight was 113 lbs., BP: 90/60. She complained of weakness, tiredness.

Since she does work with glass and has to lift heavy pieces, I would feel until her general con-

dition improves and her blood pressure improves she should be limited in the type of work that she is doing. If possible, it would be best if she had a less physical position. She was placed in addition to her prenatal vitamins, thyroid 1/2 grain daily. She will be seen again in the office and be reevaluated.

Sincerely yours,
s/ Robert E. Warner, M.D.

Claimant gave the letter to Nelson Groves, the employer's vice president on November 12, 1982. Claimant testified that Groves told her it was against company policy to change her employment and that he asked her to get a note from her doctor qualifying her for disability. Claimant testified she was unable to get such a note because Dr. Warner believed she could work in a less physically demanding position.

Groves, on the other hand, testified that he told the claimant that the note was not specific enough concerning her work limitations. He requested a more specific letter. Claimant never produced such a letter. On November 15, 1982, claimant again called Groves and asked to be reassigned. When Groves again refused, she quit.

Claimant then filed an application for benefits. The Office of Employment Security (OES) granted benefits and the employer appealed to the referee. Claimant subsequently filed another application for benefits incorporating a different benefit year based on the same incident. The OES again approved the claim and the employer filed a second appeal.

The hearing on the first appeal of the employer was held on January 20, 1983. The following day, the referee mailed out his decision reversing the OES determination in which he made credibility findings in favor of the employer. He decided that since the claimant had failed

to produce a more specific letter from her doctor concerning her limitations, she had failed to establish the requisite cause of a necessitous and compelling nature justifying her voluntary termination. On February 4, 1983, claimant appealed this decision to the Board.

On February 11, 1983, a hearing was held on the second appeal. At this hearing, the claimant introduced the following two letters:

February 2, 1983
RE: Linda Bonanni

To Whom It May Concern:

Miss Linda Bonanni was first seen in our office for this pregnancy Sept. 17, 1982 . . . which confirmed pregnancy of approximately 8 weeks.

On Nov. 11, 1982, she was seen at which time her weight was 113 1/2, BP: 90/60. She was placed on 1/2 grain of thyroid each morning and at that visit she stated she worked with heavy glass which she had to lift and she was afraid because of feeling so weak that she might drop the glass and injure either herself or other workers and stated she had not been able to work for the past two weeks. Because of this, letter was sent Nov. 11 requesting that she not lift heavy pieces because of the worry that she might injure herself or others.

Her pregnancy was advanced and I continue to feel that she should not lift material weighing more than 15 lbs. for the reason stated above. I had requested that she continue her employment but in a limited capacity such as mentioned. I wish you would give this your consideration.

Sincerely yours,
s/ Robert E. Warner, M.D.

February 8, 1983
RE: Linda Bonanni

To Whom It May Concern:

Miss Linda Bonanni was seen in our office Nov. 11, 1982 at which time her weight was 113 lbs. Her BP: 90/60 and because of the hypertension, she was started on 1/2 grain of thyroid in addition to her medication. She stated that she had been unable to work for the past two weeks because of feeling so faint and being careful of working with glass that she might drop it and injure herself or others.

Miss Bonanni was quite concerned about this and I agreed that being so hypotensive and faint that she might endanger herself or others at work. Because of this, she was advised not to do lifting such as her work entails during her pregnancy.

Sincerely yours,
s/ Robert E. Warner, M.D.

The claimant also presented the testimony of Richard Danzinger, a fellow employee and an officer in the union which represented the employer's factory workers, who corroborated the claimant's testimony that she was at times required to lift pieces of glass weighing over fifteen pounds by herself. The referee, however, refused to consider any of this evidence and again denied benefits based on his decision following the first hearing.

On February 25, 1983, the claimant appealed this second decision of the referee to the Board. On March 15, the Board affirmed the first referee's decision and claimant filed a timely appeal to this Court. On April 15, 1983, the Board affirmed the second decision of the referee and the claimant again filed a timely appeal to this Court. Both appeals were consolidated and the matter is now before us for decision.

The claimant first argues that the referee and the Board erred in concluding that she failed to meet her burden of proving by competent evidence that she had cause of a necessitous and compelling nature to justify her voluntary termination. She argues that the November 11, 1982 letter from Dr. Warner and her own testimony were sufficient to meet this burden. The crucial factual findings of the referee are as follows:

10. At the November 11, 1982, meeting with her supervisor, claimant was told the doctor's report was too vague, contained no details, and claimant should obtain a more specific and detailed report setting forth what jobs claimant could and could not do and what weights she could or could not lift.

. . . .

13. Claimant never obtained or gave her employer a more specific doctor's report. . . .

14. In the absence of a doctor's report stating claimant could not perform her regular duties and setting forth in detail what she could or could not perform, the employer, according to its rules and regulations, could not assign claimant to other work of a lighter nature.

. . . .

REASONING: . . . there is no credible medical evidence in the record that claimant had to quit her job or could not perform her regular duties.

. . .

(Referee's Decision, 1/21/83).

In *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982), the Supreme Court held that, in order to prove cause of a necessitous and compelling nature to terminate employment, a claimant must offer competent evidence that adequate health reasons existed at the time of termina-

tion and that the employer was aware of the health problems. In *Steffy v. Unemployment Compensation Board of Review,* 499 Pa. 367, 453 A.2d 591 (1982), the Supreme Court held that competent evidence was not to be equated with competent *medical* evidence and, therefore, a claimant's own testimony accompanied by medical documentation in the form of physician's statements could be sufficient to supply the necessary proof.[1] Because the claimant in *Steffy* had been denied benefits for failure to provide expert medical testimony, the court remanded the case for consideration under the proper standard of competent evidence rather than competent medical evidence.

We have no doubt that the claimant here offered competent evidence which could be sufficient to meet her burden under the *Steffy* standard and were no more involved we would reverse for that reason alone. Disposition of this question is complicated by two factors. First, the referee stated that "[t]here is no *credible* medical evidence in the record that claimant had to quit her job or could not perform her regular duties." (Referee's Decision, 1/21/83). Two observations are in order. First, a physician need not advise a claimant to quit his or her job. *Steffy.* Second, the doctor's note did state that the claimant's problems relating to her pregnancy did prevent her from performing her regular job. The referee, however, stated that no *credible* evidence existed in this regard, implying that he did not believe the doctor's November 11, 1982 letter which opined that the claimant could not perform her regular job.

---

[1] In *Goettler Distributing, Inc. v. Unemployment Compensation Board of Review,* 96 Pa. Commonwealth Ct. 632, 508 A.2d 630 (1986), we held that in the case of commonplace health problems, a claimant's own testimony, not supported by medical documentation, can meet the requisite burden of proof in a voluntary quit because of health problems.

This credibility determination cannot be reversed on appeal. *Bowman v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980).

The second complicating factor is the referee's finding that the employer asked for a more specific letter from Dr. Warner delineating what the claimant could and could not do. Our review has unearthed no cases where the establishment of cause of a necessitous and compelling nature hinges upon the employer being given the specific parameters within which a claimant can work when faced with medical problems. In *Fetterman v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 233, 235 n.2, 467 A.2d 402, 404 n.2 (1983), we stated:

> Although we are aware that Genetin v. Unemployment Compensation Board of Review, 499 Pa. 125, 451 A.2d 1353 (1982), obviated the requirement that the employee attempt to initiate or effectuate a transfer to more suitable work, we are equally cognizant, however, of the employee's responsibility to remain available to the employer if reasonable accommodations can be made by the employer which are not inimical to the employee's health.

In *Genetin,* the Supreme Court stated:

> Where an employee because of a physical condition, can no longer perform his regular duties, he must be available for suitable work, consistent with the medical condition, to remain eligible for benefits. However, once he has communicated his medical problem to the employer and explained his inability to perform the regularly assigned duties, an employee can do no more. . . . As long as the employee is available where a reasonable accommodation is made

by the employer, that is not inimicable [sic] to the health of the employee, the employee has demonstrated the good faith effort to maintain the employment relationship required under the Act. . . . To insist upon the employee's initiating the quest for an alternative position, would require a meaningless ritual that does not further the objectives of the Act.

499 Pa. at 130-31, 451 A.2d at 1356 (citations omitted).

Recognizing that the Supreme Court has not ruled on the exact issue presented here, we believe that the employer's request for a specification of what a claimant can and cannot do is reasonable when considered in the context of the above quoted portion of *Genetin*. We fail to see how an employer can make a reasonable accommodation when that employer does not know what is reasonable.[2]

Claimant argues that the record shows that the employer never made a request for a more specific letter from Dr. Warner. In support of this argument, she points to a summary of an interview with the employer conducted by an OES employee. In that interview, the employer never informed OES of the failure of the claimant to obtain a letter specifying her limitations. Claimant posits that the employer took this position only after obtaining legal representation. While we find plausibility to the claimant's argument, this argument was made to the referee in the context of attacking the employer's credibility. We are powerless to reverse this credibility determination.

The claimant also argues that the referee erred in deciding the second case on the basis of the first when

---

[2] We caution that we will not countenance requests by employers for specific limitations when such requests are a mere pretext for attempting to deny benefits to otherwise qualified claimants.

different evidence was presented at the second hearing. The evidence was the two letters of Dr. Warner which specified the claimant's limitations. These letters, however, were never presented to the employer and, in light of the immediately foregoing discussion, the failure to present these letters to the employer would require the denial of benefits.

Affirmed.

### ORDER

Now, December 22, 1986, the orders of the Unemployment Compensation Board of Review, one dated March 15, 1983 at No. B-215965 and the other dated April 15, 1983 at No. B-217201, are affirmed.