IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorraine Harmer, :
              Petitioner :
               :
           v. : No. 1364 C.D. 2018
               : Submitted: May 3, 2019
Unemployment Compensation Board :
of Review, :
            Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: August 22, 2019

          Lorraine Harmer (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying her claim for benefits under Section 402(b) of the Unemployment Compensation Law (Law), 43 P.S. §802(b).[1] In doing so, the Board affirmed the Referee's decision that Claimant failed to offer substantial evidence of a necessitous and compelling reason for leaving her employment. For the following reasons, we affirm the Board's order.

          Claimant worked full-time for Chester County Intermediate Unit's (Employer) Brandywine Virtual Academy as a math teacher beginning on January 14, 2014. Her last day was January 10, 2018. Claimant filed a claim for unemployment compensation benefits, which the Unemployment Compensation

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b), which states, in relevant part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

(UC) Service Center denied under Section 402(b) of the Law. Claimant appealed, and the Referee held a hearing on May 7, 2018.

At the hearing, Claimant testified on her own behalf. Claimant explained that she suffered from post-traumatic stress disorder (PTSD) and fibromyalgia. Her PTSD is often triggered by encounters with male authority figures. Claimant testified that during a meeting with her supervisor, Charles Harper, on December 15, 2017, Harper began acting aggressively and yelled at her, which triggered Claimant's PTSD. Thereafter, Claimant requested accommodations pursuant to the Americans with Disabilities Act of 1990 (ADA).[2] On January 10, 2018, Claimant met with a group of Employer's administrative staff about the December 2017 incident and her request for accommodations.[3] She also provided Employer with a doctor's note placing restrictions on her work due to her PTSD and fibromyalgia.

Claimant testified that when she began feeling unsafe at work, she considered taking leave pursuant to the Family and Medical Leave Act (FMLA).[4] Mark Cottom, President of Employer's teacher union, told Claimant that FMLA leave was "off the table." Notes of Testimony (N.T.), 5/7/2018, at 11; Reproduced Record at 94a (R.R. ___). More specifically, Cottom informed Claimant that if she did not resign, Employer would discharge her, which would jeopardize her teaching certificate. If she took FMLA leave, she could not continue teaching or look for

---

[2] 42 U.S.C. §§12101-12213.

[3] Claimant testified she faced retaliation from Employer's Human Resources Department because of her accommodation requests. On January 11, 2018, Claimant met with an Equal Employment Opportunity Commission representative to file a claim against Employer for retaliation. She was unable to file a claim, but later filed one which remained open at the time of the hearing. Board Adjudication, 9/12/2018, Finding of Fact No. 10; Reproduced Record at 218a (R.R. ___).

[4] 29 U.S.C. §§2601-2654.

2

other work as her family's sole provider. Claimant believed she had no other choice but to resign. Claimant verbally resigned on January 23, 2018. Claimant tried to rescind her resignation on February 7, 2018, so that she could take FMLA leave.

Iain Strachan, Employer's Director of Human Resources, testified that Claimant had submitted five requests for work accommodations under the ADA, all of which were of a general nature. On January 10, 2018, Strachan met with Claimant to clarify her requests. For example, Claimant requested an ergonomic workstation, but her workstation was already ergonomic. Strachan encouraged Claimant to submit a more detailed request if she needed a different workstation. He further explained that:

> She also asked about, you know, to take time to go to doctor's appointments, I said, yes, she can absolutely take time to go to doctor's appointments…. She asked to go to aqua fitness in the morning, that she needed to go to aqua fit classes in the morning before she can – would have to come to work. I said I needed more information about that, why it had to be aqua fitness classes. She said she needed a non-stressful environment. I was like again, you have to give me some specifics, so I can respond to them…. She then worked with doctors and gave me some specifics; all of these accommodations were based on fibromyalgia. Her original meeting, she had said, she has PTSD and there was nothing said about PTSD [in the] paperwork on that.

N.T. 24; R.R. 107a. Strachan was "very surprised" that Claimant decided to resign because Employer was "working diligently to try and get her back to work and make accommodations." N.T. 25-26; R.R. 108a-09a. He became aware through the union representative that Claimant wanted to rescind her resignation. Strachan testified that by that point Claimant had abandoned her position because "she hadn't been to work since January 10th and she resigned. She left the students. She handed her

3

computer in [on January 24th.] She sent her notice that she was gone." N.T. 26; R.R. 109a. Employer had hired a substitute teacher to fill Claimant's position by the time Claimant tried to rescind her resignation.

The Referee concluded that Claimant failed to establish a necessitous and compelling reason for leaving her employment and affirmed the UC Service Center's determination that Claimant was ineligible for benefits.

Claimant appealed to the Board, which issued its own findings of fact. The Board credited Employer's witnesses and found that Claimant intended to resign. Claimant's resignation was effective on January 24, 2018, after she wrote to Employer, used up nearly all of her sick time, accepted other employment and informed her co-workers that she had resigned. Claimant could not revoke her resignation. The Board further determined that Claimant did not show that her health conditions of PTSD and fibromyalgia gave her a necessitous and compelling reason to resign. Employer granted several of Claimant's requested accommodations and was collecting more information from Claimant about others, *i.e.*, her request to go to aqua fitness classes before work and her request to work half days from home. Claimant provided some additional information but then resigned two days later, before Employer could act on her request. The Board concluded that Claimant did not make a reasonable effort to preserve her employment by resigning precipitately. Accordingly, the Board affirmed the Referee's decision to deny benefits. Claimant petitioned for this Court's review.

On appeal,[5] Claimant argues that the Board erred in determining that Claimant failed to demonstrate cause of a necessitous and compelling nature for

_____

[5] Our review determines "whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial competent

4

voluntarily resigning her employment. Specifically, she argues that she proved a compelling medical reason to quit her job and made a reasonable effort to preserve her employment. Claimant also contends that Employer failed to accommodate her health problems.

This Court has explained that a claimant has a necessitous and compelling reason for leaving employment when:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment.

*Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

A claimant's medical condition may create a necessitous and compelling reason to leave her employment. *Lee Hospital v. Unemployment Compensation Board of Review*, 637 A.2d 695, 698 (Pa. Cmwlth. 1994). To establish a compelling medical reason to quit, the claimant must: (1) offer competent testimony that adequate health reasons existed to justify the voluntary termination; (2) have informed the employer of the health problems; and (3) have been available to work with reasonable accommodations. *Ann Kearney Astolfi DMD PC. v. Unemployment Compensation Board of Review*, 995 A.2d 1286, 1290 (Pa. Cmwlth. 2010). Once a claimant meets this burden, the employer must establish that it made a reasonable attempt to identify and propose possible accommodations for the employee's health problems. *Lee Hospital*, 637 A.2d at 698.

---

evidence." *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

5

It is undisputed that Claimant suffers from PTSD and fibromyalgia and that she informed Employer of these conditions. The Board determined that Claimant requested multiple accommodations and that Employer made some of these accommodations. For example, Employer allowed Claimant to take breaks during meetings and allowed her to bring a support person with her to meetings with her male supervisor. Employer was investigating Claimant's request to attend an aqua fitness class before work and to work half days from home, but she quit before Employer could make a final decision on all of the accommodations. Simply, Employer lacked complete knowledge of Claimant's needs, which it needed before it could grant her requested accommodations. *Bonanni v. Unemployment Compensation Board of Review*, 519 A.2d 532, 549 (Pa. Cmwlth. 1986) (explaining that employer may ask for more specific information as to what claimant can and cannot do to determine what is a reasonable accommodation). Claimant did not have a compelling and necessitous reason to quit while Employer was considering her accommodation requests.

Claimant next argues that she made reasonable efforts to preserve her employment because she rescinded her resignation. She argues that the Board placed too much emphasis on her January 22, 2018, email to her union representative, suggesting that Employer consider January 24, 2018, to be her effective resignation date if Employer would not approve her request to work from home.[6] Claimant also contends that the Board's finding that Employer replaced her

---

[6] Claimant's email to her union representative read, in part, as follows:
> I am ready to begin the process of resignation of my BVA math teacher role [and] I have scheduled a personal day for tomorrow (1/23/18), and would like to request a resignation as soon as possible – with a possible resignation date of Wednesday 1/24/18. As I only have 1.5 sick days remaining, resignation would need to occur this week – if Strachan is unable to approve the request to work from home.

R.R. 72a.

around January 24, 2018, is not supported by substantial evidence. Claimant further contends that after she began the resignation process, she learned in a discussion with her union representative that FMLA leave was a possibility. She immediately rescinded her resignation so she could request FMLA leave. Claimant asserts that the foregoing demonstrates a reasonable attempt to preserve her employment.

"An employee who revokes his resignation before the 'effective date' of his resignation and before the employer took steps to replace him is entitled to benefits." *Spadaro v. Unemployment Compensation Review Board*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004). Here, the Board found Claimant's resignation was effective January 24, 2018, and that Employer had taken steps to replace Claimant. Board Adjudication, 9/12/2018, at 4; R.R. 220a. These findings are supported by Claimant's email to her union representative on January 22, 2018, indicating her intention to resign as soon as possible. On January 23, 2018, Claimant emailed her co-workers, informing them that she had resigned and had accepted other employment. Claimant's attempted revocation of her resignation did not occur until February 7, 2018, by which time Employer had hired a substitute to fill Claimant's position. Board's Adjudication, 9/12/2018, Finding of Fact No. 20; R.R. 219a. Because Claimant's attempted revocation was not made until after its effective date, by which time Employer had hired a replacement, Claimant's resignation was effective on January 24, 2018. Accordingly, we agree with the Board that Claimant did not make a reasonable effort to preserve her employment.

For all of the above reasons, we affirm the Board's order.

_____
MARY HANNAH LEAVITT, President Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorraine Harmer,           :
         Petitioner    :
                  :
        v.           :    No. 1364 C.D. 2018
                  :
Unemployment Compensation Board  :
of Review,              :
        Respondent   :

# **O R D E R**

AND NOW, this 22nd day of August, 2019, the order of the Unemployment Compensation Board of Review dated September 12, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge